[No. 13276.  Department Two.  June 23, 1916.]

NORMAN E. GEORGE et al., Respondents, v. CARSTENS
PACKING COMPANY, Appellant.[1]

MASTER AND SERVANT—INJURIES TO THIRD PERSONS—SCOPE OF EM-
PLOYMENT—QUESTION FOR JURY. Whether a departure from his usual
course, by the driver of an auto delivery truck, was within or with-
out the course of his employment, so as to make his employer liable
for his negligence, is a question for the jury, where, in making a
night delivery out of the city, he was accompanied by a co-servant,
as was frequently done without special directions, and on returning,
he went out of his way a short distance to take him home; since
the act bore such close relationship to his duties and the departure
was not so marked that reasonable minds could not arrive at but
one conclusion.

Appeal from a judgment of the superior court for Thurs-
ton county, D. F. Wright, J., entered July 31, 1915, upon
the verdict of a jury rendered in favor of the plaintiffs, in
an action for damages for injuries resulting from an auto-
mobile collision.  Affirmed.

T. M. Vance, for appellant.

Troy & Sturdevant, for respondents.

PARKER, J.—The plaintiffs, George and wife, seek recovery
for personal injuries, and also injuries to their automobile,
which they claim resulted from the negligent operation of
an automobile delivery wagon of the defendant, Carstens
Packing Company, while in charge of one of its employees.
Trial in the superior court sitting with a jury resulted in
verdict and judgment in favor of the plaintiffs for the sum
of $900, from which the defendant has appealed to this court.

There seems to be almost no dispute as to the detail facts,
though as we proceed we think it will appear that there is
ample room for honest difference of opinion as to the ulti-
mate fact as to whether or not appellant's employee in charge

[1]Reported in 158 Pac. 529.

of its automobile was, at the time respondents were injured, acting within the scope of his employment so as to render appellant liable, which is the only question of serious moment here.

At the time in question, appellant owned and operated a market at the corner of Fourth and Washington streets, in the city of Olympia. Its automobile delivery wagons were kept at the Knox garage, at the corner of Third and Franklin streets, being one block east and north of the market. Appellant's employees having charge of its automobile delivery wagons were required to take and leave them at the Knox garage upon finishing the deliveries of each day. Fourth street runs east and west, Third street being parallel therewith and the next one to the north. One of appellant's customers was the Fir Tree Lumber Company, having its place of business some twelve miles southeast of the city, to whom appellant made deliveries of goods once or twice a week in the evenings after business hours at the market.

About six o'clock of the evening of October 22, 1914, one Husk, appellant's employee, in accordance with the usual custom and under instruction from his superiors, started with one of appellant's automobile delivery wagons to make delivery of goods to the Fir Tree Lumber Company. One Shahan, another employee of appellant, went along with Husk, evidently without being specially directed so to do, but merely for a ride and to keep Husk company. It was already dark when they started. They left and returned to the city by way of Main street, running directly south. Upon their return after a few hours' absence from the city, they stopped for a moment at the stable of appellant, situated on the alley next south of Fourth street about half a block distant from the rear of the market. Husk concluded that, while taking the automobile to the Knox garage, he would take Shahan to his home near Fourth street, some eight blocks east of the market. Mentioning this fact to Shahan, the latter mildly protested, or rather suggested that it might

not be the proper thing to do. However, Husk concluded it would be all right to do so, so far as his duty as an employee of appellant was concerned. They then proceeded east on Fourth street, passing Franklin street, on which the Knox garage is located one block to the north. Arriving at Shahan's home, he was left there, and Husk, returning west on Fourth street, came into collision with respondents' automobile, inflicting the injuries for which they seek recovery. This occurred on Fourth street several blocks east of Franklin street, at which point Husk would ordinarily have turned off Fourth street to the Knox garage one block north.

It was one of the rules of appellant, known to all of its employees, that they were not permitted to use the automobile delivery wagons for any purpose personal to themselves or other than in the business of appellant. It was not, however, against the rules of appellant for the employee making deliveries to the Fir Tree Lumber Company at night to take with him another employee. Indeed, this seems to have been frequently done, and apparently with the knowledge of appellant's manager. It is readily conceivable that the taking of another employee along, in view of the distance from the city and such delivery being made in the nighttime, might be desirable in the interest of appellant, though it was permissible only and not required as a part of any employee's duty.

Counsel for appellant contends that Husk was acting independent of, and outside of, the scope of his employment in the taking of Shahan to his home, and would be so outside the scope of his employment until he returned to the Knox garage, or at least until he returned to Franklin street, the point of departure from the ordinary route from the stable to the Knox garage, and that the trial court erred in declining to so rule as a matter of law, upon appellant's motions and request for instructed verdict. Counsel for respondents contend that, under all the circumstances shown, Husk was not acting outside the scope of his employment,

and that, in any event, if he was so acting from the time he left the stable until he left Shahan at his home, he, Husk, upon starting to return from Shahan's home, resumed his duty as appellant's employee, in that he was then taking the automobile delivery wagon in his charge to the Knox garage for appellant, it being argued that these questions were, in any event, questions of fact for the jury to decide.

The automobile delivery wagon being the property of appellant and, at the time of respondents' injuries, in charge of Husk, appellant's employee, and no contention being here made but that respondents' damage resulted from Husk's negligence, it is plain, under our decisions, that appellant is rendered liable, unless it be shown that Husk was at that time acting outside the scope of his employment. *Knust v. Bullock*, 59 Wash. 141, 109 Pac. 329; *Burger v. Taxicab Motor Co.*, 66 Wash. 676, 120 Pac. 519; *Birch v. Abercrombie*, 74 Wash. 486, 133 Pac. 1020, 135 Pac. 821, 50 L. R. A. (N. S.) 59; *Switzer v. Sherwood*, 80 Wash. 19, 141 Pac. 181.

The trial court declined to decide the case as a matter of law in appellant's favor, but by its instructions, in effect, submitted to the jury the question of Husk having departed from the course of his employment in taking Shahan to his home, and also the question of Husk having resumed his employment and acting within the scope thereof upon leaving Shahan at his home and returning towards the garage for the purpose of leaving the automobile delivery wagon there, when respondents were injured upon Fourth street. The rule of law here controlling is plain. That is, that the master is liable for the negligence of his servant when committed in the execution of the master's business within the scope of his employment. But we have here presented, in its last analysis, really a question of fact—a question of fact, it is true, resting upon a number of detail facts which are practically uncontroverted, but nevertheless a question of fact, in that it is an ultimate fact to be determined from these minor facts,

as to which ultimate fact reasonable minds, we think, might honestly arrive at different conclusions. A problem much like that here presented was learnedly discussed by Judge Torrance, speaking for the court, in *Ritchie v. Waller*, 63 Conn. 155, 28 Atl. 29, 38 Am. St. 361, 27 L. R. A. 161, touching the difficulties of the problem, as follows:

"In reality, however, the difficulty here spoken of arises in ascertaining whether the act was done in the execution of the master's business within the scope of his employment, which, as we shall see, is ordinarily a question of fact, and not in applying the rule when that fact has been ascertained. This fact once determined, the rule can be easily applied, but the rule cannot at all aid in the determination of the fact. The rule tells us that the master's liability depends upon whether the acts were done in the execution of his business within the scope of his employment, but it does not help us to determine whether they were or not so done.

"In like manner the general rule of construction is that the intent of the parties shall prevail. This tells us what to do when the intent has been ascertained, but affords no aid in a particular case in ascertaining what the intent is. Whether then the act of a servant, for which it is sought in a particular case to hold the master responsible, was done in the execution of the master's business within the scope of the employment or not, must from the nature of things in most cases be a question of fact to be determined as such by the jury or other trier, because no general rule of law has been or probably can be laid down the application of which will determine the matter in all cases. Sometimes, however, this question is determined by the court as a matter of law. But in by far the greater number of cases where the question of the master's responsibility turns, as in the present case, principally upon the mere extent of deviation by the servant from the strict course of his employment or duty, it has been generally held to be one of fact and not of law.

"In such cases it is, and must usually remain, a question depending upon the degree of deviation and all the attendant circumstances. In cases where the deviation is slight and not unusual, the court may and often will, as matter of law, determine that the servant was still executing his master's busi-

ness. So too, where the deviation is very marked and unusual, the court in like manner may determine that the servant was not on the master's business at all, but on his own. Cases falling between these extremes will be regarded as involving merely a question of fact, to be left to the jury or other trier of such questions.

"Thus, in *Phelon v. Stiles*, 43 Cónn. 426, the deviation of the servant from the strict course of his duty was so slight that this court, as matter of law, held the master liable, while in *Stone v. Hills*, 45 Conn. 44, the deviation was so marked and unusual that it refused to hold the master responsible.

"On the other hand, where a servant, contrary to his duty, and solely for a purpose of his own, drove his master's horse and cart a quarter of a mile out of the way, the question whether in and while so doing he was in the execution of his master's business, within the scope of his employment, was left to the jury as a question of fact. *Whatman v. Pearson*, L. R. 3 Com. Pleas, 422. 'Whether the servant is really bent on his master's affairs or not is a question of fact, but a question which may be troublesome.' Pollock on Torts, side p. 71. In the following cases; among many others, this question was decided as one of fact: *Kimball v. Cushman*, 103 Mass. 194; *Redding v. So. Car. R. R. Co.*, 3 So. Car. 1; *Rounds v. Del., Lack. & Western R. R. Co.*, 64 N. York 129; *Cormack v. Digby*, 9 Irish Rep. Com. Law Series, 557; *Burns v. Poulsom*, L. R. 8 Com. Pleas, 563." .

So here, it seems to us that the question of Husk being within or without the scope of his employment, at the time respondents received their injuries, is not so plain under all the circumstances here shown that it can be decided as a matter of law. His departure from the usual route was comparatively slight. The taking of Shahan to his home this short distance away from the usual route, in view of the circumstances under which Shahan accompanied him on his night delivery trip and the time of their return, certainly brings this act of Husk in at least very close relationship with his duties as appellant's employee, and having in mind the burden of proof resting upon appellant in view of the ownership of the automobile delivery wagon, while in the pos-

session and control of Husk as appellant's employee, we are constrained to hold that the trial court correctly submitted the case to the jury.  Our own decisions in *Kneff v. Sanford*, 63 Wash. 503, 115 Pac. 1040, and *Hammons v. Setzer*, 72 Wash. 550, 130 Pac. 1141, lend some support to this conclusion, though we do not cite those decisions as being exactly in point.  See, also, *Barmore v. Vicksburg, S. & P. R. Co.*, 85 Miss. 426, 38 South. 210, 70 L. R. A. 627.

Counsel for appellant relies particularly upon our decision in *Jones v. Hoge*, 47 Wash. 663, 92 Pac. 433, 125 Am. St. 915, 14 L. R. A. (N. S.) 216, and also the decision of the Maryland court of appeals in *Symington v. Sipes*, 121 Md. 313, 88 Atl. 134, 47 L. R. A. (N. S.) 662.  The *Jones* case we think is not controlling, since it appears that defendant's chauffeur took the machine from the garage without defendant's knowledge or permission, using it exclusively on an errand personal to himself.  In the *Symington* case, it is true the chauffeur originally had possession of the automobile in the course of his employment by the defendant, but his departure from the course of his employment and use of the machine, which was wholly foreign to his employment, covered several hours and many miles of travel, during which time he injured the plaintiff.  In other words, in both of these cases the departure of the employee from the course of his employment was so marked that reasonable minds could arrive at no other conclusion than that there was a departure by the servant from the course of his employment.

We are constrained to hold that the learned trial court did not err in declining to take the case from the jury as requested by counsel for appellant, nor in submitting to the jury the questions we have discussed.  One or two other errors are suggested, but we think they are wholly without merit and that the case does not require further discussion.

The judgment is affirmed.

MORRIS, C. J., HOLCOMB, BAUSMAN, and MAIN, JJ., concur.