## WRIGHT v. INTERMOUNTAIN MOTOR CAR CO., et al.

No. 3235.   Decided Nov. 20, 1918.   Rehearing Denied Jan. 6, 1919.
(177 Pac. 237.)

1. PLEADING—LIBERAL CONSTRUCTION. The court on appeal must construe the allegations of a pleading liberally. (Page 179.)

2. MASTER AND SERVANT—PLEADING—REQUISITES AND SUFFICIENCY. Complaint, in action for personal injuries when struck by automobile on city street, *held* sufficient as against general demurrer, in respect to the purpose for which, and the one on whose behalf, the automobile was used at the time of the accident. (Page 179.)

3. PLEADING—GENERAL DEMURRER—ADMISSIONS. A general demurrer admits not only truth of every fact alleged, but of all legitimate inferences deducible therefrom. (Page 179.)

4. MASTER AND SERVANT—TORTS OF SERVANTS—LIABILITY OF MASTER. Where servant employed to demonstrate automobiles, to accommo-

date out of town customer, took out an automobile after business hours, which the customer, in driving, ran upon plaintiff, the employer was not liable. (Page 179.)

5. MASTER AND SERVANT—TORTS OF SERVANT—LIABILITY OF MASTER. To make master liable for injury by instrumentality owned by him under control of servant, the instrumentality must be used in the master's business, and he is not liable if it is being used by the servant for his own social affairs.[1] (Page 182.)

6. MASTER AND SERVANT—TORTS OF SERVANT—LIABILITY OF SERVANT. Where servant employed to demonstrate automobiles, in order to accommodate out of town customer, took out an automobile after business hours, which the customer in driving ran upon the plaintiff, the servant could be held liable. (Page 183.)

7. MASTER AND SERVANT—TORTS OF SERVANT—EVIDENCE—GENERAL CUSTOM. Where a servant took master's automobile for private social purposes of a customer of the master, who, in driving it, injured plaintiff, evidence of general custom in automobile business of accommodating customers by furnishing cars was immaterial. (Page 184.)

8. MASTER AND SERVANT—TORTS OF SERVANT—INSTRUCTIONS. Where servant took automobile solely for private purposes of master's customer, who in operating it injured plaintiff, charge in action against master that his liability was not to be determined according to whether the servant was authorized to use the car, or whether he used it in violation of instructions, *held* erroneous. (Page 185.)

9. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTIONS. Refusal of requested instructions sufficiently covered by the general charge is not prejudicial. (Page 185.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. P. C. Evans*, Judge.

Action by Mary Josephine Wright against the Intermountain Motorcar Company and C. N. Carruthers.

Judgment on verdict for plaintiff against both defendants, and they separately appeal.

---

[1] *McFarlane* v. *Winters*, 47 Utah, 598, 155 Pac. 437, L. R. A. 1916D, 618; *Ferguson* v. *Winter*, 46 Utah, 321, 150 Pac. 299; *Fowkes* v. *J. I. Case, etc., Co.*, 46 Utah, 502, 151 Pac. 53.

REVERSED as against defendant company and AFFIRMED as against the individual defendant.

*Allen T. Sanford* and *Bagley & Ashton* for appellants.

*Moore, Mitchell & Maginnis* and *George C. Buckle* for respondent.

FRICK, C. J.

The plaintiff brought this action against the defendants to recover damages for personal injuries which she alleged she suffered from the negligence of the defendants in driving an automobile against the plaintiff, knocking · her down and severely injuring her. After alleging the necessary matters of inducement, etc., plaintiff alleged that on the 23d day of December, 1916, at about nine twenty o'clock p. m., while she was crossing the intersection of certain streets in Salt Lake City, "an automobile owned and controlled by Intermountain Motor Company, one of the defendants herein, and directed, operated, and driven by or under the direction or control of the defendant C. N. Carruthers, was driven along," etc. She then alleges that the automobile was driven at an unlawful rate of speed; that she was run against and knocked down, and she then describes her injuries and alleges her damages and prays for judgment. Defendants each filed a general demurrer to the complaint. The demurrers were overruled, and the defendants then filed a joint answer, in which they denied that portion of the complaint we have quoted, denied the alleged negligence, and pleaded contributory negligence on the part of the plaintiff. Upon these issues a· trial to a jury resulted in a verdict in favor of plaintiff against both defendants. Judgment was duly entered on the verdict, from which the defendants have taken separate appeals and have separately assigned numerous errors.

We shall consider such assignments of error as we deem material, regardless of the order in which they are assigned or argued in counsel's brief.

It is contended that the court erred in overruling the general demurrers. We do not deem it necessary to make an analysis of the allegations of the complaint. It is no doubt true that the allegations respecting the purpose for which the automobile was being used and on whose ·1, 2, behalf it was used at the time of the accident are 3 meager and somewhat doubtful. Under our statute we, however, are required to construe the allegations of a pleading liberally. When, therefore, we consider, as we must, that a general demurrer admits every material fact as well as every legitimate inference deduced from such facts, and if the allegations of the complaint are liberally construed, we think the complaint, although far from being a model pleading, is, nevertheless, sufficient to withstand a general demurrer. If a special demurrer had been interposed requiring a more specific statement of particular facts, the question might well be different.

At the close of plaintiff's evidence the defendants interposed separate motions for a nonsuit. The motions were denied, and the defendant corporation, hereinafter designated company, now insists that the court erred in denying its motion for a nonsuit. At the close of all of the evidence the defendants, again in separate motions, asked the court to direct the jury to return separate verdicts in their favor. The court also denied those requests. The company now assigns the foregoing rulings of the court as error. We shall consider the two assignments referred to together.

We are of the opinion that so far as the company is concerned the court erred in denying both of those motions. The undisputed evidence, so far as material to the decision of the two assignments just referred to, is, in substance, as follows: One Brannen, who was not made a party to the action, was interested in a corporation which was en- 4 gaged in the automobile business in Idaho. He and defendant Carruthers were acquaintances, and on the 23d day of December, 1916, the day of the accident, Brannen called on Carruthers at the company's place of business. The company was engaged in the business of buying, selling, and dealing in automobiles and accessories at Salt Lake

City, and the defendant Carruthers was its manager. On the evening of the day aforesaid Brannen and Carruthers had dinner together with one or two others, and after dinner, about eight thirty p. m., Brannen suggested, as he puts it, to Carruthers that the latter go with Brannen to call upon a young lady, an acquaintance of Brannen's, and who, it seems was also an acquaintance of Carruthers. Carruthers consented to go, and took an automobile belonging to the company, which was being used in its business as a "demonstrator car." The two accordingly took the car, Carruthers driving it, to where the young lady lived, which, it seems, was not a great distance from the company's place of business. They arrived at the home of the young lady a little before nine o'clock and left there a little after that hour to come up town. On entering the car Brannen, over Carruthers' protest, entered the front seat to drive the car. Carruthers asked that he be permitted to drive the car, but Brannen insisted that he would drive it, whereupon Carruthers and the young lady took the rear seat, and Brannen drove the car up town. They had not gone very far on their way up town when, in crossing State street on Fourth South street, the car collided with the plaintiff, and she was seriously injured in the collision. The automobile, after striking plaintiff, did not stop, but proceeded nearly a block farther, where Brannen, Carruthers, and the young lady alighted from the car and entered the New Grand Hotel. Brannen had asked the young lady to attend a dance with him at the Newhouse Hotel, which was only a short distance from the New Grand Hotel, and, it seems, she had consented to do so, but, in view of the accident, it seems, they did not go to the Newhouse Hotel nor attend the dance, but entered the New Grand Hotel as before stated. Brannen, it seems, immediately left the hotel, and Carruthers then took the young lady to her home, not using the car, however. The company with which Brannen was connected in Idaho at different times had business dealings with the company, but on the day in question had no business transactions of any kind, either with the company or with Carruthers. Brannen had, it seems, however, during the day, called on Carruthers.

In visiting the young lady Brannen went for the sole pur-
pose of inducing her to attend the dance, as aforesaid, and
Carruthers went with him merely because Brannen had
asked him to go, and Carruthers took the car to accommo-
date Brannen and the young lady, if she should consent to
go to the dance, and for no other purpose.  There was a
great deal of snow on the ground at the time, and it was
difficult to drive motorcars on the street.  There was no de-
sign or purpose on the part of either Brannen or Carruthers
to use the car except for the purpose stated, and the com-
pany was neither related to nor had any interest in or con-
nection with the enterprise in which Carruthers and Bran-
nen were engaged at the time of the accident.

Other evidence was also produced by the plaintiff, over the
objection of the company, respecting the custom of automo-
bile dealers in extending courtesies to their customers by
driving them about in automobiles.  It was also shown, over
like objections, that the company had at times extended such
courtesies to some of its customers.  In view, however, that
the evidence is clear-cut and undisputed with regard to why
the car was taken by Carruthers at the time and what the
purpose of the young men was in taking it, and what it was
being used for at the time of the accident, all the inferential
evidence becomes wholly immaterial.  Where it appears, as
in this case, that the instrumentality which causes an acci-
dent and injury was, at the time of such accident, in the
custody and control of a servant or agent of the owner of
such instrumentality, and the plaintiff is unable to show by
direct evidence that the instrumentality was at the time being
used by the agent or servant within the scope of his employ-
ment and in the master's business, courts are usually quite
liberal in permitting the plaintiff to prove facts and circum-
stances from which the master's liability may be inferred.
Plaintiff's counsel, in this case, attempted to establish lia-
bility on the part of the company by circumstantial evidence.
The difficulty with the attempt, however, was that it wholly
failed, for the reason that the evidence, as before stated, is
without dispute that, although Carruthers took an automo-
bile belonging to the company, and although he was the mana-

ger of its business, yet, at the time of the accident he was not acting within the scope of his employment nor was what he did at the time either directly or indirectly connected with the business of the company. The automobile was being used entirely and exclusively in the personal or social affairs of Brannen and Carruthers. Where such is the case and the fact is established by undisputed evidence, it becomes wholly immaterial that the master may, on other occasions, have permitted one or more of its cars to be used to accommodate customers, or that its manager may have used the demonstrator car, or any other car, for such a purpose.

In order to make the master liable in case an instrumentality owned by him causes an injury while it is under the control of his servant or agent, it must appear that it was either directly or indirectly being used in the master's business, and, when the instrumentality, as here, is being used in the servant's personal or social affairs, the master is not liable, and that would be so even though the servant had asked the master to be permitted to use the instrumentality for the purpose; that is, if the servant had borrowed the same from the master for use. If under such circumstances the master could be held liable, then he would, of necessity, be responsible for all the tortious acts of his agents and servants, regardless of how, where, or in what capacity committed. Such is not the law. The law which is applicable in a case like the one at bar is clearly stated by the author in 2 Mechem, Agency (2d Ed.) section 1896, in the following words:

"Except where some liability can be based upon the inherently dangerous character of the instrumentality used, so that the master can be charged as a practical insurer, the master is not liable merely because the injury was occasioned by the fact that the servant was using the master's vehicle, implement, and the like. If it was used without the master's permission, on the servant's business, the master clearly is not liable. If it be used on the servant's business, with the master's consent, the master is not ordinarily liable. To make the master liable, ordinarily, it must be used on the master's business.

"The mere fact that the master's business is to be remotely promoted by the use is not enough to make the master liable. Where, however, his

business is being so directly facilitated that the business can fairly be called the master's, the rule may be different.''

See, also, same volume, section 1880.

The same principle is announced by this court in *McFarlane* v. *Winters*, 47 Utah, 598, 155 Pac. 437, L. R. A. 1916D, 618, *Ferguson* v. *Winter*, 46 Utah, 321, 150 Pac. 299, and in *Fowkes* v. *J. I. Case, etc., Co.*, 46 Utah, 502, 151 Pac. 53. The foregoing cases are reaffirmed in the recent case of *Ferguson* v. *Reynolds*, 52 Utah, 583, 176 Pac. 267, although in that case the owner of the car was held liable. See, also, *McCarthy* v. *Timmins*, 178 Mass. 378, 59 N. E. 1038, 86 Am. St. Rep. 490; *Northup* v. *Robinson*, 33 R. I. 496, 82 Atl. 392; *Reilly* v. *Connable*, 214 N. Y. 586, 108 N. E. 853, L. R. A. 1916A, 954, Ann. Cas. 1916A, 656; *Miller* v. *National Automobile Sales Co.*, 177 Ill. App. 367; *Louisville-Lozier Co.* v. *Sallee*, 167 Ky. 499, 180 S. W. 841; Berry, Automobiles, section 618. While it is not contended that the facts in the foregoing cases are parallel with the facts in the case at bar, yet the principles of law announced in all of them are applicable here.

Upon the other hand, the following cases, *Benn* v. *Forest*, 213 Fed. 763, 130 C. C. A. 277, *Geiss* v. *Twin City, etc., Co.*, 120 Minn. 368, 139 N. W. 611, 45 L. R. A. (N. S.) 382, *George* v. *Carstens Packing Co.*, 91 Wash. 637, 158 Pac. 529, and *Gibson* v. *Dupree*, 26 Colo. App. 324, 144 Pac. 1133, all of which are cited by the plaintiff's counsel, are all clearly distinguishable from the case at bar. In each of the cases last referred to the evidence respecting the purpose for which the automobile in question was being used at the time of the accident was inferential, conflicting, and doubtful, and thus was clearly for the jury to pass on. In the case at bar, however, the evidence respecting the purpose for which the automobile here in question was being used at the time of the accident is clear, undisputed, and direct, and hence a question of law, and not one of fact, is presented. The other evidence offered by plaintiff at most only tended to show that at other times and under different circumstances the company's automobile was being used to accommodate some of its customers. If the evidence in this

case had been inferential or doubtful respecting the purpose for which the car was being used at the time of the accident, the plaintiff's circumstantial evidence would have been proper, and would have presented a question of fact for the jury. The inferences that plaintiff sought to deduce from the use of the car on other occasions could, however, have no probative force or effect respecting the question of what it was actually used for at the time of the accident. Nor did such inferential evidence produce a conflict with respect to what the car was being used for at such time. The court therefore erred in not directing a verdict in favor of the company. It however committed no error in refusing to direct a verdict in favor of Carruthers nor in denying his motion for nonsuit.

It is also insisted that the court erred in admitting the evidence respecting the custom of dealers in extending courtesies to their customers by permitting them the use of cars, etc. We are not able to perceive how the custom of other dealers in that respect had any probative force as against the company. Plaintiff, however, did not even attempt to prove a general custom among dealers, which, under certain circumstances, and for certain purposes in a proper case, might be admissible. The question was not what was done by others, but it was what was the automobile in question being used for at the time of the accident. That is, was it being used in the owner's business or for the purpose of advancing its interests, either directly or indirectly? What others may have done, or may do, therefore, respecting their customers was not relevant to any issue, and it certainly could shed no light upon the question of what the automobile was being used for at the time of the accident. Our conclusion, therefore, is that while the court went too far in one or two instances in permitting such questions to be propounded, yet it is quite clear that the form of the questions that were propounded was far more objectionable than were the answers of the witnesses to those questions. As hereinbefore stated, where liability is sought to be established inferentially or by circumstantial evidence, much latitude is necessarily allowed in permitting the plaintiff to

prove facts from which ultimate liability may be legitimately inferred. Only such facts may, however, be permitted from which the ultimate fact sought to be established may legitimately be inferred. While the questions in some instances transcended the rule just stated, yet, in view of the answers of the witnesses, we are of the opinion that no prejudice resulted to the company; and, if this were the only error assigned, we should hesitate long before reversing the judgment.

It is next contended that the court erred in charging the jury as follows:

"The liability or nonliability of the defendant, Intermountain Motorcar Company is not to be determined by the fact that defendant C. N. Carruthers was or was not authorized to use the car in the manner it was used on said occasion. Neither is it to be determined by the fact that it was taken or used in violation of the defendant Intermountain Motorcar Company's instructions."

Circumstances may readily be imagined under which the propositions stated in the foregoing instructions, if standing alone, would not excuse the master. If the car at the time was used in the master's business, although used contrary to instructions or without authority, the master might, nevertheless, not be excused. That doctrine, however, had no application to the facts in this case, and hence the instruction was erroneous.

It is further contended that the court erred in refusing to charge the jury as requested by the company. We are of the opinion, however, that the court sufficiently covered the propositions of law contained in the requests in its general charge, and hence committed no prejudicial error in refusing the requests.

For the reasons stated the judgment is reversed as against the defendant Intermountain Motorcar Company, and is affirmed as against the defendant C. N. Carruthers, the company to recover costs.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.