# BURTON v. LA DUKE.

No. 3816.   Decided December 6, 1922.   (210 Pac. 978.)

1.  MASTER AND SERVANT—SCOPE OF EMPLOYMENT OF DRIVER OF AU-
TOMOBILE TRUCK CAUSING INJURY HELD FOR JURY.   Evidence
that defendant's servant at the time of the accident had in de·
fendant's automobile truck some clothes to be taken to defend-
ant's place of business to be cleaned, but had deviated from his
route to visit a dentist's office for his own purposes. and in-
jured plaintiff as he was turning the truck to start back to
defendant's place of business, *held* to raise a question for the
jury whether the servant was engaged in defendant's business
at the time of the accident.

2.  MASTER AND SERVANT—MASTER LIABLE FOR NEGLIGENCE OF SER-
VANT TRANSACTING MASTER'S BUSINESS.   Before the master may
be rightfully charged with negligence of his servant, it must
ordinarily be shown that the servant was engaged in prose-
cuting the master's business.[1]

3.  MASTER AND SERVANT—SLIGHT DEVIATION BY SERVANT DOES NOT
RELIEVE MASTER.   A slight deviation by the servant from the
route prescribed by his master for his own purposes, after
which he had again returned to the performance of his duty
at the time the accident occurred, does not exempt his master
from liability for his negligence.[2]

Appeal from District Court, Third District, Salt Lake
County; *Wm. M. McCrea,* Judge.

Action by Mary Jane Burton against Emery E. La Duke,
doing business as the Capitol Cleaning Company, to recover
damages for personal injuries.   Judgment for plaintiff, and
defendant appeals.

AFFIRMED.

[1] *Wright* v. *Inter-Mountain Motor Car Co.,* 53 Utah, 182, 177 Pac.
237.

[2] *Ferguson* v. *Reynolds,* 52 Utah, 583, 176 Pac. 267; *Cannon* v.
*Goodyear Tire & Rubber Co.,* 60 Utah, 346, 208 Pac. 519.

---

---

*Richards & Mitchell,* of Salt Lake City, for appellant.

*Stewart, Stewart & Alexander,* of Salt Lake City, for respondent.

CORFMAN, C. J.

Plaintiff brought this action against the defendant to recover damages alleged to have been sustained by her on account of the negligent operation of an automobile upon the streets of Salt Lake City. It is alleged in the complaint that the automobile was out of repair, and by reason of that and the careless and negligent manner in which it was driven by the agent or servant of the defendant it ran into and struck the plaintiff, causing her serious injuries of which she complains. The answer denies the allegations of the complaint, and for an affirmative defense alleges that if the plaintiff was injured in the manner complained of it was while the defendant's agent was acting wholly outside the scope or course of his employment, and without fault of the defendant. After a trial to a jury judgment was duly entered upon a verdict in plaintiff's favor. Defendant appeals.

He assigns many alleged errors as grounds for a reversal of the judgment. The principal errors, and those relied on in the brief and argument before this court, are as follows: (1) The denial of defendant's motion for a nonsuit at the conclusion of plaintiff's evidence; (2) certain instructions given to the jury; (3) the refusal to charge the jury as requested by the defendant; (4) the exclusion and admission of certain evidence over defendant's objections; (5) the refusal to grant defendant's motion for a new trial. It is also claimed as ground for a reversal of the trial court's judgment that the evidence was insufficient to justify a verdict in plaintiff's favor.

It appears from the record that at the time of the accident complained of the defendant was engaged in operating a cleaning plant under the name and style of the Capitol

Cleaning Company, at the southwest corner of the intersection of State and Eighth South streets in Salt Lake City. Defendant had in his employ a number of employés working on a commission basis, among them one Frank E. Pettigrew, whose duty it was to drive a small automobile truck furnished him by the defendant and used by Pettigrew in soliciting orders about the city and gathering and delivering the clothing of the patrons of the cleaning plant. The agents or employés referred to had certain routes or districts assigned to them by defendant in which to do their work. Pettigrew's district was in the southern part of the city, and in doing his work he seldom went farther north than Seventh South street.

In the trial of the case, upon the conclusion of the plaintiff's evidence, proof had been received which tended to show that on June 21, 1921, the day of the accident, Pettigrew reported for duty at the defendant's cleaning plant at about 8 o'clock a. m. He afterwards, about 9 o'clock a. m., drove out the defendant's automobile truck, which he had been accustomed to use in the performance of his duties or work, and proceeded to deliver and collect· clothes for the defendant's cleaning plant. There was some conflict in the evidence as to the condition the truck was in at the time. According to the testmony of Pettigrew, the driver of the car, quoting from the evidence:

"The brakes wouldn't work. When I would make a turn, if I got into the car track or anything like that, or have to come out from another automobile, the car would lock on me. * * *⸀ After I got in some place where I had to make a quick turn it made it kind of bad for me. When the wheels would go to one side and then lock and then swing to the other side I would get control over it after I had gone a little ways. ·* * * I told him [the defendant] it was hard to steer, and that the wheel turned over every once in a while. I don't know as I said anything about locking. I just told him they turned over on me, and I would be liable to tip over. La Duke [defendant] said, 'Be careful and do not let that happen.' "

The witness was unable to say just where he had been making calls to deliver and collect clothing that morning prior to the accident, except that he did say that he had

called and received some clothes for cleaning from a tailoring shop situated at No. 134 West Second South street at about the noon hour. From there he proceeded to drive the truck in an easterly direction over Second South street to Main street, the principal thoroughfare of Salt Lake City, and thence north one block up Main street to the Deseret Bank building, situated on the northeast corner of the intersection of Main and First South streets, where he parked the defendant's truck on the east side of Main street in front of said bank building for the purpose of calling upon his dentist to have an ulcerated tooth treated. After remaining with the dentist about 30 minutes Pettigrew returned to the truck, backed it from the curb, and was proceeding to make a turn to the west side of Main street so as to drive with the bundles he had theretofore gathered during the forenoon to the defendant's cleaning plant, and while making said turn the mechanism of the truck refused to properly operate, causing the truck to run into the safety zone, where the plaintiff was standing waiting for a street car, and knocked her down and injured her. Thereupon Pettigrew and the truck were taken by the traffic officers to the police station. Afterwards the truck was tested by the city officials, who found it to be out of repair and difficult to operate on account of the steering gear having a tendency to lock, thereby preventing a driver from keeping it at times under proper control. The witness Pettigrew had also testified in plaintiff's behalf that, while he had a certain route or district to cover in the doing of his work for the defendant, he did not know its boundaries; that he had that morning for the first time gone as far north as Second South street, and theretofore he had not been going farther north than Seventh South street while doing his work for the defendant. Said witness also testified that he was not confined to any particular hours in which to do his work and in going to the dentist about the noon hour on that particular day his sole purpose was to have an ulcerated tooth treated, of which purpose the defendant had not been informed.

By reason of the facts and circumstances above stated, we think the ruling of the district court in denying defendant's

motion for a nonsuit upon the conclusion of plaintiff's direct evidence was fully justified. We will not pause to discuss the legal effect of the evidence at this stage of the trial proceedings, but shall defer doing so until later, when all the evidence in the case, in connection with all the other errors assigned, will be under consideration.

After the motion for nonsuit had been denied the evidence adduced in behalf of defendant tended to show, without going into detail, that the truck was in a fairly good condition of repair shortly before the accident. Defendant's evidence also showed that the bundles of clothing, five in number, found in the car right after the accident, had all been gathered at places south of Seventh South street. None was found in the car belonging to the tailoring establishment on Second South street, from which place Pettigrew testified he had driven the car directly to the Deseret Bank building at the corner of First South and Main streets, for the purpose of having his tooth treated, immediately prior to the accident. Defendant's evidence also tended to show that Pettigrew's district to work in was south of Seventh South street, and that he had been directed by the defendant not to use the truck for any other purpose than those connected with the work he had been employed to do for the defendant within the district assigned to him.

Evidence in behalf of the plaintiff on rebuttal, however, tended to show that the defendant's cleaning establishment had, prior to the accident in question, sent Pettigrew for bundles of clothing to the Oregon Short Line Railroad Depot, as far north as South Temple street, the Deseret Savings Bank building being on First South street on a direct line of travel following streets between said depot and defendant's plant on State street.

After both sides had rested their case, the defendant moved for peremptory instructions, directing the jury to return a verdict as to each cause of action set forth in the complaint, no cause of action. These requests were refused by the trial court. The defendant also presented to the trial court certain requests that the jury be instructed to the

Appeal from Third District

effect that, if they found it to be a fact that the defendant's
agent Pettigrew had not, on the day of the accident, been
authorized to go to any place in Salt Lake City north of
Seventh South street, then their verdict should be for the
defendant, no cause of action. We think these requests, in
the light of the evidence, were also properly denied by the
trial court. They, in effect, as did also the defendant's
motion for nonsuit and his previous requests for a directed
verdict, asked the court to find as a matter of law that under
the evidence the defendant could not be held to answer in
damages for the injuries sustained by the plaintiff in the
accident of which she complains. There was some substantial
evidence in the record not only tending to show that the
defendant had with knowledge, not only sent out his em-
ployé Pettigrew upon the streets to do his work with an
auto truck dangerously defective in operation, but also tend-
ing to show that, as has been seen, defendant had at
least on one previous occasion in the furtherance of
his cleaning business sent Pettigrew far beyond the
district in which it was claimed his duties were to be per-
formed. That being true, it was for the jury, under proper
instructions given by the court, to find as a fact from all
the evidence, and not for the court to determine as a matter
of law, whether or not the defendant's servant had exceeded
his authority, and was not acting within the scope of his
employment nor in the furtherance of his master's business
at the time when and the place where the accident com-
plained of occurred.

It has been strenuously argued and contended, both orally
and in printed brief by defendant's counsel, that the con-
duct of Pettigrew in driving the truck north of Seventh
South street, and more especially in driving it from the tail-
oring establishment on Second South street to the Deseret
Savings Bank building to have his tooth treated, were purely
personal matters, in which the defendant's servant was alone
interested; that Pettigrew's said acts were without the scope
of his employment and nowise tended to further the business
of defendant. The principal cases cited and relied upon by

counsel to support their contention are the following: *Wright* v. *Inter-Mountain Motor Car Co. et al.*, 53 Utah, 182, 177 Pac. 237; *Slater* v. *Advance Thresher Co.*, 97 Minn. 305, 107 N. W. 134, 5 L. R. A. (N. S.) 598; *Danforth* v. *Fisher*, 75 N. H. 111, 71 Atl. 535, 21 L. R. A. (N. S.) 93, 139 Am. St. Rep. 670; *Patterson* v. *Kates* (C. C.) 152 Fed. 481; *Dowdell et al.* v. *Beasley*, 87 South. 18; *Healey* v. *Cockrill*, 133 Ark. 327, 202 S. W. 229, L. R. A. 1918D, 115; *Seidl* v. *Knop*, 174 Wis. 397, 182 N. W. 980; *Gousse* v. *Lowe*, 41 Cal. App. 715, 183 Pac. 295; *Martinelli* v. *Bond*, 42 Cal. App. 209, 183 Pac. 462; *Drobnicki* v. *Packard Motor Co.*, 212 Mich. 133, 180 N. W. 459; *Brinkman* v. *Zuckerman*, 192 Mich. 624, 159 N. W. 316; *Provo* v. *Conrad*, 130 Minn. 412, 153 N. W. 753; *St. Louis Southwestern Ry. Co.* v. *Harvey* (C. C. A. 8th Cir.) 144 Fed. 806, 75 C. C. A. 538, 539. These cases support the doctrine that, before the master may be rightfully charged with the negligence 2 of his servant, ordinarily it must be shown that the servant was engaged in prosecuting the master's business.

We do not think the principles of law adhered to by the cases cited by defendant have any application to the facts and circumstances as disclosed by the record in the case at bar. Clearly, in no case cited by defendant was the servant engaged in the performance of the work he had been employed to do; nor was he promoting or furthering his master's business.

Here, under the evidence, the question was left in doubt, and, under all the facts and circumstances it became, as has been pointed out, the province of the jury to say whether or not Pettigrew, at the time of the accident, was engaged in the prosecution or furtherance of the defendant's business. Of course Pettigrew's visit to the dentist was a purely personal matter, but right up to the time he parked the truck for that purpose he had been driving the truck from place to place in the city gathering clothes for the cleaning plant, and thereby was furthering the defendant's business. After the short visit to the dentist upon his return to the truck, he backed it from the curb, and was again on his way to

the defendant's plant with the clothes he had theretofore
collected when the accident happened. Right at the very
time of the accident, the truck was being operated in the
furtherance of the defendant's business, and there is no
escape from that conclusion under the evidence, as we view
it in this case.

True, Pettigrew made a slight deviation from a direct
route to the defendant's cleaning plant by driving to the
Deseret Savings Bank, but, nevertheless, under all the facts
and circumstances, we know of no principle of law that
would justify the conclusion that by doing that he entirely
abandoned or departed from his master's employment.
While he had, under the facts and circumstances, at-        3
tended to a purely personal matter at the dentist's
office, nevertheless he had, when the accident happened, again
assumed charge of and was operating the truck with the
avowed intention and purpose of discharging the duties he
owed to the defendant. Slight deviation from his duty
under such circumstances, did not exempt his master from
liability for his negligence in the event of accident. *Barmore*
v. *Vicksburg, S. & P. R. Co.*, 85 Miss. 426, 38 South. 210,
70 L. R. A. 627, 3 Ann. Cas. 594; *Ritchie* v. *Waller*, 63
Conn. 155, 28 Atl. 29, 27 L. R. A. 161, 38 Am. St. Rep. 361;
*Quinn* v. *Power Co.*, 87 N. Y. 535, 41 Am. Rep. 392; *McKier-
nan* v. *Lehmaier*, 85 Conn. 111, 81 Atl. 969; *Schrayer* v.
*Bishop & Lynns*, 92 Conn. 677, 104 Atl. 349; *Thomas* v.
*Lockwood Oil Co.*, 174 Wis. 486, 182 N. W. 841; *Slothower* v.
*Clark*, 191 Mo. App. 105, 179 S. W. 55; *Gibson et al.* v.
*Dupree*, 26 Colo. App. 324, 144 Pac. 1133; *Rahn* v. *Singer
Mfg. Co.* (C. C.) 26 Fed. 912; *George* v. *Carstens Packing
Co.*, 91 Wash. 637, 158 Pac. 529; *Ferguson* v. *Reynolds*, 52
Utah, 583, 176 Pac. 267.

We have tried to show that, ordinarily, in cases of this
kind, the question of whether or not, the wrong complained
of was committed within the scope of the servant's employ-
ment is one primarily to be determined by the jury from
the evidence in the particular case, more especially where
there is doubt or conflicting evidence as to the authority

Burton v. La Duke, 61 Utah 78

conferred upon the servant by the master and the scope of his employment.

The facts in this case are readily distinguishable from those in either *Gousse* v. *Lowe,* supra, or *Cannon* v. *Good- year Tire & Rubber Co.* (60 Utah, 346), 208 Pac. 519, relied on by defendant, in which it was found by the courts that there had been a complete departure from, and the servants were not acting within, the scope of their employment nor in the furtherance of the master's business when the acci- dents happened. In the Gousse Case a servant, in disobe- dience of his master's express orders not to use an automo- bile for his own purposes, drove it more than 2½ miles distant from the place where he had been directed to go or could have driven it in furtherance of his master's busi- ness. While returning the automobile to the master after attending to a purely personal matter by reason of the serv- ant's negligence, it collided with another, causing damage. The Supreme Court of California held that the act of the servant was not a slight deviation from his employment, but a substantial one, and therefore, in the absence of doubt or any conflicting evidence, the court reached the conclusion and found as a matter of law that the master was not liable for the damages. So, too, in the case of *Cannon* v. *Goodyear Tire & Rubber Company,* supra, this court held as matter of law that, where a servant had driven a Ford truck at about the noon hour of a Saturday to a railroad station to deliver his master's freight, after which it became the serv- ant's final duty under his employment for that day to im- mediately return the truck to the master's garage, but in disobedience to orders took the truck for his own purposes, drove it to his home in an opposite direction blocks away, and retained it there while he assisted his wife in her house- hold duties until 6 o'clock p. m., and then, while returning the truck and en route to his master's garage, through neg- ligence, caused injuries to another, the negligence of the servant was not attributable to the master.

In this connection the defendant also contends that the

following charge given by the court to the jury, was erroneous.

"It is necessary, therefore, that you find as a matter of fact whether Pettigrew, at the time and place of the accident, was in fact acting within the scope of his employment. In this connection you are instructed that it is not every deviation, however slight, that a servant may make from the strict execution of his employment, nor every disregard of his master's instructions, that will be such an interruption of the course of his employment as to relieve his master from liability for the negligent acts of such servant, and the fact that the driver Pettigrew made a slight departure from the strict course of his employment at the time or immediately prior to the accident itself, if you find that such departure was in fact made, is not of itself sufficient to relieve the defendant from liability for the injuries received by the plaintiff, if you find as a matter of fact that at the time and place of the accident Pettigrew was in fact acting within the general scope of his employment, and was then and there engaged in furthering the general purpose of his employment."

For the reasons already stated we think this instruction when read and considered with the other instructions given by the court to the jury, correctly stated the law applicable to the evidence in the case.

With respect to the rulings of the trial court in the admission and rejection of certain testimony, we do not find that the trial court committed any prejudicial error in the rulings complained of by defendant.

The defendant also complains that the evidence in this case was insufficient to support or justify the verdict of the jury. In making that assignment as a ground for reversal of the judgment, the particulars wherein the evidence was claimed to be insufficient were not pointed out by the defendant in his assignments of error, as required by our statutory and court rules of appellate procedure. Defendant has made application to amend his assignments in that regard. Having had to review and consider the entire evidence in connection with the other assignments properly made by defendant, his application to amend or supplement his assignments of error in this particular becomes immaterial, and therefore will not be passed upon by the court.

For the reasons heretofore stated, we are of the opinion

that the contentions of the defendant that the trial court erred in the particulars complained of by him are not sustained by the record on this appeal.

It is therefore ordered that the judgment of the district court be, and the same is hereby, affirmed, with costs.

WEBER, GIDEON, THURMAN, and FRICK, JJ., concur.