## WOODY v. UTAH POWER & LIGHT CO.
### No. 510.

Circuit Court of Appeals, Tenth Circuit.
Dec. 11, 1931.

Kneland C. Tanner, of Salt Lake City, Utah (Willard Hanson, of Salt Lake City, Utah, on the brief), for appellant.

Emmett M. Bagley, of Salt Lake City, Utah (Robert L. Judd and Paul H. Ray, both of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS and McDERMOTT, Circuit Judges, and POLLOCK, District Judge.

PHILLIPS, Circuit Judge.

Woody brought this action against the Utah Power & Light Company to recover for injuries to his person and his automobile resulting from an automobile collision. At the close of the evidence the trial court directed a verdict for defendant on the ground that plaintiff was guilty of contributory negligence.

The evidence, considered in the light most favorable to plaintiff, established the following facts: On November 2, 1929, about two o'clock in the afternoon, plaintiff was traveling north along the Salt Lake-Ogden highway in a Chevrolet automobile, and Jessop, an employee of defendant, was traveling in the opposite direction along such highway in a Ford automobile belonging to defendant. The paved portion of such highway is eighteen feet wide and there is a dirt shoulder on each side of the pavement. When Jessop reached a point about three hundred feet from plaintiff, Jessop drove off the pavement and permitted a car coming from behind to pass. He then turned to the left and drove his car across the pavement and against plaintiff's car. The front of Jessop's car struck plaintiff's car at about the center of the left-hand side. Plaintiff saw Jessop drive off the pavement and slow up, and concluded that Jessop intended to stop. He then saw Jessop turn his car to the left and drive toward the center of the pavement. When plaintiff saw Jessop turn off the pavement, he took his foot off the accelerator for an instant. When he realized that Jessop intended to drive across the pavement ahead of him, he swerved sharply to the right to avoid the collision. Three other cars were traveling north, closely behind plaintiff's car. Plaintiff was driving about thirty miles an hour. Jessop was driving at a slow rate of speed, estimated by various witnesses at from three to five miles an hour, at the time he drove off the pavement and at the time he attempted to drive across it. Plaintiff's car was in plain view of Jessop from the time he turned off the pavement until they collided.

Jessop was employed by defendant as a division foreman in charge of construction, maintenance, and operation of its overhead distribution system from Centerville to Deweyville, Utah. On the day of the accident, there were three crews of men working in his district. Each was in charge of a foreman, but all three were under the supervision of Jessop. One crew was working in the vicinity of the accident.

Defendant furnished the gas, oil and repairs for the car driven by Jessop and the latter used it in the course of his employment.

Jarvis testified as defendant's witness that he was employed as line superintendent by defendant, and was Jessop's immediate superior; that Jessop quit work shortly after noon on the day of the accident; that he had given Jessop no orders for work to be done that afternoon, and that he gave Jessop orders only when he desired some special work done. Jessop performed his duties without orders from him.

Jessop testified as defendant's witness that he quit work at noon, that he left the office of defendant in the automobile which he was driving at the time of the accident, and drove to a grocery store at Ogden, where he purchased meat and groceries; and that he then drove to the place of the accident; that he was en route to a stand situated near the highway for the purpose of purchasing eggs for his own use; that he had no work to do for defendant in the vicinity where the accident occurred, and went there solely to buy such eggs.

For the purpose of impeachment, Jessop was asked on cross-examination whether, about one week after the accident at the Dee Hospital in Ogden City, Leona Woody did not say to him, "What were you turning in there for, anyway?" and if he did not reply, "I had some men working close by and was turning in to park the car so as to see about the work." For the same purpose, he was further asked if he did not state to Bert Woody, "I was turning in to park my car because I had some men working there." Plaintiff also offered to prove such statements by Bert Woody and Leona Woody. The trial court sustained defendant's objections to the admission of this evidence.

The trial court was of the opinion that plaintiff was guilty of contributory negligence as a matter of law. We are unable to agree with this conclusion. Plaintiff had a right to believe under the circumstances that Jessop would not drive into or in front of him. Even after Jessop drove on to the west half of the pavement, plaintiff had the right to assume that he would stop before crossing the center. Automobile drivers who desire to make a left-hand turn, where there are no cars approaching on their side of the road and the traffic is heavy on the opposite side, as a common practice drive to the center of the road and wait for an opportu-

nity to pass quickly through such traffic. Plaintiff was traveling at a moderate rate of speed, had his car under control, had the right-of-way, and was in plain view of Jessop. Jessop was driving at a slow rate of speed and could have stopped almost instantly. Until it appeared to plaintiff that Jessop intended to drive in front of him or into him, he was not called upon to act. When Jessop's intentions became apparent to plaintiff, the time for action was exceedingly short. Two courses of action were open to him, one to put on his brakes and try to stop, and the other to turn to the right and endeavor to pass Jessop. Plaintiff chose the latter course. Even though he did not choose wisely, he was not guilty of contributory negligence as a matter of law.

■ Where the operator of a motor vehicle by a sudden emergency is placed in a position of imminent danger, and has insufficient time to determine with certainty the best course to pursue, he is not held to the same accuracy of judgment as is required under ordinary circumstances; and if he pursues a course of action to avoid an accident, such as a person of ordinary prudence placed in a like position might choose, he is not guilty of contributory negligence even though he did not adopt the wisest choice. Greyhound Lines v. Noller (C. C. A. 7) 36 F.(2d) 443; Carnahan v. Motor Transit Co., 65 Cal. App. 402, 224 P. 143; Kearney v. Castellotti, 55 Cal. App. 541, 203 P. 1029; Uhl v. Fertig, 56 Cal. App. 718, 206 P. 467; Lee v. Donnelly, 95 Vt. 121, 113 A. 542; Leslie v. Catanzaro, 272 Pa. 419, 116 A. 504; McGowan v. Tayman, 144 Va. 358, 132 S. E. 316; Lavenstein v. Maile, 146 Va. 789, 132 S. E. 844; Gravel v. Roberge, 125 Me. 399, 134 A. 375; Kennedy v. Opdenweyer, 11 La. App. 532, 121 So. 636, 123 So. 906; 42 C. J. § 592, p. 890.

The trial court expressed the opinion that, if Jessop was guilty of negligence and plaintiff free from contributory negligence, defendant was liable for Jessop's wrongful act. It predicated this opinion on the ground that an automobile is a dangerous instrumentality. While this proposition is supported in one adjudicated case (Southern Cotton Oil Co. v. Anderson, 80 Fla. 441, 86 So. 629, 16 A. L. R. 255), it is contrary to the decisions of Utah and the great weight of authority (McFarlane v. Winters, 47 Utah, 598, 155 P. 437, 440, L. R. A. 1916D, 618; 42 C. J. § 16, p. 614).

There is a tendency on the part of the courts, however, to apply the dangerous instrumentality doctrine to automobiles operating on the crowded streets of large cities. Schweinhaut v. Flaherty (App. D. C.) 49 F.(2d) 533; District of Columbia v. Colts, 282 U. S. 63, 51 S. Ct. 52, 75 L. Ed. 177.

■ The owner of a motor vehicle is liable for injuries to a third person caused by the negligent operation thereof by the owner's servant, while acting within the scope of his employment. Fowkes v. J. I. Case Threshing M. Co., 46 Utah, 502, 151 P. 53, 56; McNeal v. McKain, 33 Okl. 449, 126 P. 742, 743, 41 L. R. A. (N. S.) 775; McFarlane v. Winters, supra; 42 C. J. § 855, p. 1094.

To impose such liability, the use of the motor vehicle must have been within the scope of the servant's employment, that is, the use must have been in the service of the master or while the servant was about the master's business. Fowkes v. Case Threshing M. Co., supra; McFarlane v. Winters, supra; Wright v. Intermountain Motor Car Co., 53 Utah, 176, 177 P. 237; McNeal v. McKain, supra; Burton v. La Duke, 61 Utah, 78, 210 P. 978, 979; Whitehorn v. Mosier, 119 Okl. 155, 245 P. 553, 555; Stumpf v. Montgomery, 101 Okl. 257, 226 P. 65, 67, 32 A. L. R. 1490; 42 C. J. § 861, p. 1099.

■ The owner of the motor vehicle, in the absence of personal negligence, is not liable for the negligent operation thereof by his servant, when the latter is using such motor vehicle solely for an independent purpose of his own. Wright v. Intermountain Motor Car Co., supra; Stumpf v. Montgomery, supra; McNeal v. McKain, supra; 42 C. J. § 867, p. 1105.

The rule applies both where the master has consented and where he has not consented to such use. McFarlane v. Winters, supra; Stumpf v. Montgomery, supra; 42 C. J. p. 1107.

Counsel for defendant contend that the evidence established that at the time of the accident Jessop was using the automobile solely for an independent purpose of his own, and that the trial court therefore properly directed a verdict for defendant, even if plaintiff was not guilty of contributory negligence as a matter of law.

■ The fact that Jessop was an employee of defendant, that the automobile belonged to defendant, that Jessop used it in performing his duties as such employee and that men

under the supervision of Jessop were working in the vicinity of the accident were circumstances from which the inference might be drawn that Jessop was acting within the scope of his employment at the time of the accident. Foundation Co. v. Henderson (C. C. A. 5) 264 F. 483; Benn v. Forrest (C. C. A. 1) 213 F. 763; Ward v. Teller Res. & I. Co., 60 Colo. 47, 153 P. 219; Echols v. Hurt, 116 Okl. 43, 243 P. 493; Note 42 A. L. R. 898; 42 C. J. p. 1213.

On the other hand, Jessop testified that he was off duty at the time of the accident, and was using the automobile solely for an independent purpose of his own.

 It is our opinion that the court erred in rejecting the testimony offered to impeach Jessop. The testimony should have been received, not as primary proof that Jessop was acting within the scope of his employment at the time of the accident, but to impeach his statement made on the witness stand to the contrary, and it should have been so restricted by proper instruction. Pullman Co. v. Culbreth (C. C. A.) 2 F.(2d) 540, 42 A. L. R. 164.

Jessop was the only one who knew with certainty whether he was going to the stand to purchase eggs or was going to where his men were working nearby. On this vital question, had the proffered evidence been received, he would have been impeached. Under such circumstances the question of whether Jessop was acting within the scope of his employment or was using the automobile solely for an independent purpose of his own at the time of such accident would have been peculiarly one for the determination of the jury. Ferris v. Sterling, 214 N. Y. 249, 108 N. E. 406, Ann. Cas. 1916D, 1161; Ward v. Teller Co., supra.

Reversed and remanded, with instructions to grant a new trial.