McFARLANE v. WINTERS.

No. 2823.   Decided February 11, 1916.   (155 Pac. 437.)

1. APPEAL AND ERROR—REVIEW—VERDICT. A verdict on conflicting evidence is conclusive on appeal. (Page 601.)

2. PARENT AND CHILD—LIABILITY OF PARENT—ACCIDENT—AUTOMO-BILES. The mere fact that a father owned an automobile which he allowed his minor son to drive will not establish the father's liability for injuries resulting from the son's negligence while operating the car in the absence of the father; an automobile not being a dangerous agency for which the owner is liable though he allows another to operate it.[1] (Page 602.)

3. MASTER AND SERVANT—TORTS OF SERVANT—ACTIONS—EVIDENCE. In an action where it was sought to hold a father liable for the negligence of his son who was driving in the father's absence the latter's motorcar, evidence held insufficient to show that the son was the father's agent or servant at the time. (Page 609.)

[1]*Ferguson* v. *Winter*, 46 Utah 321, 150 Pac. 299; *Fowkes* v. *J. I. Case, etc., Co.*, 46 Utah 502, 151 Pac. 53.

Appeal from District Court, Seventh District; *Hon. A. H. Christensen,* Judge.

Action by Parlan McFarlane against W. P. Winters and Glen Winters.

Judgment for plaintiff. Defendants appeal.

REVERSED AND REMANDED AS TO THE FIRST DEFENDANT.

AFFIRMED as to the latter.

*Samuel A. King* and *George Christensen* for appellants.

*Lewis Larson,* for respondent.

## RESPONDENT'S POINTS.

The general rule at common law, that a parent is not liable for the independent, negligent or tortious act of his child, merely by reason of the relationship existing between them, is applicable in actions for negligence against a parent to recover for injuries resulting from the operation of the parent's automobile by his child. (*Parker* v. *Wilson,* 179 Ala. 361; 43, L. R. A. (N. S.) 87; *Smith* v. *Jordan,* 211, Mass. 269; *Linville* v. *Nissen,* 162 N. C. 95.) But a minor child may become a servant of his parent by a particular arrangement without any agreement for compensation. (*Parker* v. *Wilson, supra.*)

It is a antural arrangement for a father whose time is largely occupied, and who does not care to undertake the operation of the car himself, to buy an automobile with the understanding that one of his children shall operate it for the family. Out of such a situation it is obvious that the facts may be such as to show a relationship of master and servant between the father and child which will render the former liable for the negligent operation of his car by the latter when acting for the purposes of the father. (*McNeal* v. *McKain,* 41 L. R. A. (N. S.) 224; *Smith* v. *Jordan,* 211 Mass. 269, 97 N. E. 761; *Bourne* v. *Whitman,* 35 L. R. A. (N. S.) 701; *Ploetz* v. *Holt,* 124 Minn. 169, 144 N. W. 745; *Kayser*

v. *Va Nert*, 51 L. R. A. (N. S.) 970; *Daily* v. *Maxwell*, 152 Mo. App. 415, 133 S. W. 351; *Hays* v. *Hogan*, 180 Mo. App. 227, 165 S. W. 1125; *Hiroux* v. *Baum*, 137 Wis. 197, 19 L. R. A. (N. S.) 332; *Cohn* v. *Vorgenecht*, 83 Misc. 28, 144 N. Y. Supp. 399.)

FRICK, J.

The plaintiff sued the defendants to recover damages for alleged injuries to himself and to his horse and buggy. He alleged that the injuries were caused through the negligence of the defendant Glen Winters in negligently driving and managing the defendant W. P. Winters' automobile, and thereby causing a collision with plaintiff's horse and buggy while he was lawfully driving along on a public highway in Sanpete County, Utah. Glen Winters, who is represented by a guardian *ad litem*, was at the time of the accident a minor eighteen years of age, and is the son of W. P. Winters, who is a physician living at Mt. Pleasant, Utah. The latter used the automobile in question in his practice as a physician and surgeon.

Both defendants denied the alleged negligence, pleaded contributory negligence on the part of the plaintiff, and the doctor also denied liability upon the ground that, under the facts and circumstances, he was not responsible for his son's acts, even though it were conceded that the latter so negligently drove and managed the automobile as to cause the collision and consequential damages resulting therefrom.

After the plaintiff had produced his evidence and rested his case the defendants made separate motions for a nonsuit. Glen Winters based his motion upon the grounds that the plaintiff had not established negligence on his part, and that the evidence, as a matter of law, established contributory negligence on the part of the plaintiff which caused the accident and consequential damages. W. P. Winters based his motion upon the foregoing grounds and upon the further ground that the plaintiff had failed to produce any evidence authorizing the finding and judgment that he was legally responsible for the alleged negligence of his son, Glen Winters. The court overruled both motions, and after the defendants had

produced their evidence it also refused to direct a verdict in favor of the defendants as requested, and submitted the case to the jury against both defendants. The jury found in favor of the plaintiff and against both defendants. The court entered judgment upon the verdict, and both defendants appeal.

The principal errors assigned by Glen Winters are: (1) That the evidence is insufficient to justify a finding of negligence on his part; and (2) that, in view of all the evidence, the plaintiff was guilty of negligence as a matter of law which caused the injury complained of. W. P. Winters also assigned the foregoing errors, and also assigned an additional ground, namely, that there is no evidence whatever justifying a finding that he was legally responsible for his son's acts in driving and managing the automobile at the time and place of the accident.

The evidence respecting the cause of the collision is voluminous and quite conflicting. We could subserve no good purpose either in setting forth the evidence or in stating the facts with regard to how the accident occurred. It must suffice to say that there was sufficient evidence of negligence on the part of Glen Winters in driving and managing the automobile at the time and place to be submitted to the jury for their determination. Their finding upon that subject is therefore conclusive upon us. The same result must follow with regard to the question of plaintiff's contributory negligence. While if the latter question had been left for us to determine, we might have arrived at a different conclusion, yet, in view that there is substantial evidence in support of the finding of the jury, our views in that regard are quite unimportant.

This disposes of the assignments on the part of Glen Winters as well as of the first two assignments interposed on behalf of Dr. Winters. The doctor's third assignment, namely, that there is not sufficient evidence justifying the verdict or judgment by which he is held responsible for his son's acts presents more difficulty. We have carefully read the evidence, which is preserved in a bill of exceptions, and we have been unable to arrive at the conclu-

sion that, under the facts and circumstances disclosed by the evidence, the father, under the law, can be held responsible for the acts of the son, which acts, the jury found, caused the accident and the consequential injuries and damages as before stated. It conclusively appeared from the evidence that Dr. Winters was not present at the time and place of the accident, and therefore had no control over the son in driving and managing the automobile, and that he knew nothing concerning the accident until after it had occurred. The plaintiff, however, sought to establish the doctor's liability upon the theory that the automobile was owned by him, that it had theretofore been driven by the son in the father's business affairs, and that at the time of the accident it was being driven by the son in the father's affairs. In other words, the plaintiff seeks to hold the father responsible for the acts of the son upon the theory of principal and agent or that of master and servant. All the evidence produced by the plaintiff relating to the question now under consideration is, in substance as follows: The plaintiff, and at least two of his witnesses, testified that they knew the automobile in question; that it was owned by Dr. Winters, and that he used it in his business of practicing medicine; that prior to the accident they on several occasions had seen the son drive the car both when the doctor was in it and when only other members of his family were in the car with the son. Those witnesses, however, all admitted that they had no knowledge with regard to the circumstances or arrangement, if any, under which the son operated the automobile at the times referred to by them. The plaintiff also testified that Glen Winters, Glen's mother, and her little child, and two young ladies or girls, as he called them, were in the car at the time and place of the accident. The plaintiff, in answer to the question of whether he had any conversation with the doctor after the accident occurred, also testified:

"Why, Dr. Winters said he had sent the boy over to Spring City with his wife and the girls, and he said they were going to a picnic party of some kind at one of the girls' mother's place, and he said he ought to have went himself but he sent the boy."

On cross-examination he was asked the following question:
"Isn't it a fact that he (the doctor) told you at the time that
the fact was his boy was, at the suggestion of this young lady
—that he was driving for this young lady to take her to her
mother's home?"

He answered:

"He (the doctor) said he (the son) was taking them over to
a social over at her (the young lady's) mother's.   *   *   *
Why, he simply said that he was taking them over to Spring
City to a birthday party."

It was also shown by plaintiff's evidence that Spring City
is a country town several miles distant from Mt. Pleasant,
where the doctor lived, and that the party in the automobile
were on their way to Spring City when the accident occurred.
Plaintiff's counsel cites and relies on the following cases as
sustaining his contention that the foregoing evidence is suffi-
cient to charge the doctor with responsibility for his son's acts,
namely, *McNeal* v. *McKain,* 33 Okl. 449, 126 Pac. 742, 41 L. R.
A. (N. S.) 775; *Smith* v. *Jordan,* 211 Mass. 269, 97 N. E. 761;
*Bourne* v. *Whitman* 209 Mass. 155, 95 N. E. 404, 35 L. R. A.
(N. S.) 701; *Ploetz* v. *Holt,* 124 Minn. 169, 144 N. W. 745;
*Daily* v. *Maxwell,* 152 Mo. App. 415, 133 S. W. 351; *Marshall*
v. *Taylor,* 168 Mo. App. 246, 153 S. W. 527; *Hays* v. *Hogan,*
180 Mo. App. 237, 165 S. W. 1125; *Hiroux* v. *Baum,* 137 Wis.
197, 118 N. W. 533, 19 L. R. A. (N. S.) 332; *Birch* v. *Aber-
crombie,* 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59;
and *Moon* v. *Matthews,* 227 Pa. 488, 76 Atl. 219, 29 L. R. A.
(N. S.) 856, 136 Am. St. Rep. 902.   It may be said that the
three cases cited from the Courts of Appeal of Missouri, the
case from the Supreme Court of Minnesota, and the one from
the Supreme Court of Washington sustain counsel's conten-
tion.   The Supreme Court of Washington lays down the doc-
trine in the following language:

"Ownership of an automobile is *prima facie* proof that it was in
the possession of, and was being driven for, the owner."

The three courts last referred to state the proposition in
somewhat different form; but they practically all agree that,
where the ownership of an automobile is shown to be in a par-
ticular person, such evidence constitutes *prima facie* proof

that the automobile was being used in his business affairs at the time and place when and where an accident was occasioned through the negligence of the person in charge of or driving the automobile. The other cases cited above do not go to the extent claimed for them by counsel. We shall refer to those cases again hereinafter.

It will be observed that from plaintiff's evidence in this case it was made to appear that the automobile in question was, in fact, in the possession and under the control of Glen Winters, the son, so that what must be inferred in this case is that Glen was the servant or agent of his father, and was engaged in the latter's business affairs at the time and place of the accident. Can such an inference be legitimately deduced from the mere fact that Glen was at the time driving an automobile owned by his father? Is not the inference just as natural and quite as strong that Glen was driving the automobile either for his own use or for the use of some one other than the father? Is it not a matter of common knowledge and experience that not only automobiles, but all kinds of vehicles, as well as other instrumentalities, while owned by one person, may nevertheless, at a particular time and place, be in the possession of another person, and may be used by the latter for his, and not for the owner's benefit? It is certainly going to what we consider undue lengths to hold that, because an automobile, or any other vehicle or instrumentality, is shown to be owned by one person, but is found in the possession and use of another, the only legitimate inference to be deduced from such fact is that such other person is the agent or servant of the owner, and is using the instrumentality in the owner's business affairs or for his use and benefit. This court has refused to so hold in the recent case of *Ferguson* v. *Winter*, 46 Utah, 321, 150 Pac. 299, where we expressly held that, where a person on a public street is injured by being run into by a delivery wagon which, it was made to appear, was not driven by the owner, but was at the time of the alleged injury under the control of a third person, the plaintiff was required "to produce evidence that the driver was the servant of the defendant (the owner of the wagon), acting in the course of his employment at the time of the accident, since the mere use of the wagon is not sufficient

to hold the owner for injuries caused by the driver.'' In a more recent case still, *Fowkes* v. *J. I. Case, etc., Co.*, 46 Utah 502, 151 Pac. 53, we practically announced the same principle although under somewhat different circumstances. After again carefully going over the case, and after more thorough reflection upon the fundamental principles involved, we are firm in the opinion that the doctrine laid down in the cases just referred to is sound in reason, conforms to fundamental legal principles, and is supported by the best-reasoned cases upon the subject. It certainly cannot successfully be contended that, because of the mere fact that the instrumentality in question is an automobile, therefore a new rule with regard to how the relationship of principal and agent or master and servant may be established is to be applied. We think it may still be safely affirmed that, where it is sought to hold one person responsible and civilly liable for the torts committed by another, whether such other be the child of the owner or a stranger, it must be made to appear by competent evidence that the relationship of principal and agent or that of master and servant existed between the two at the time the tort was committed, and, in addition to that, that the tortious act complained of was committed in the course of the employment of the servant, or was within the scope of the agency. While the courts which hold to the doctrine announced by the Supreme Court of Washington do not dispute the foregoing rule, they nevertheless contend that all of the foregoing elements may be inferred from the mere fact of ownership of the automobile which causes the injuries complained of. In our opinion, to so hold constitutes a clear departure from the general principles which control in actions for tort where the master is held responsible for the acts of the servant or for those of his agent, and to that effect, in our judgment, is the clear weight of authority.

In the case of *White, etc., Co.* v. *Rivoux*, 88 Ohio St. 18, 102 N. E. 302, 46 L. R. A. (N. S.) 1091, Ann. Cas. 1914C, 1082, the doctrine is correctly stated by the Supreme Court of Ohio. It is there held that, where it is sought to hold the owner of an automobile responsible for the negligent acts of the driver, merely to prove the ownership of the automobile,

and that the servant of the owner was at the time in charge of it, was not enough. It was accordingly held that:

"It was incumbent upon the plaintiff below to establish by a preponderance of the evidence that he (the driver) was acting within the scope of his employment."

In *Maher* v. *Benedict*, 123 App. Div. 579, 108 N. Y. Supp. 228, the rule is stated in the first headnote thus:

"The owner of a motor car is not liable for injuries resulting from the negligent driving of the car by his son, merely because of his ownership, or because he permitted his son to drive the car, or because the driver was his son."

In the course of the opinion the court further said:

"Liability cannot be cast upon the defendant because he owned the car, or because he permitted his son to drive the car whenever he wished to do so (*Cavanagh* v. *Dinsmore*, 12 Hun (N. Y.) 468), or because the driver was his son (Shearman & Redfield on Negligence (5th Ed.), Section 144). Liability arises from the relationship of master and servant, and it must be determined by the inquiry whether the driving at the time was within the authority of the master, in the execution of his orders, or in the doing of his work" (citing authorities).

In a case where the owner of an automobile was sought to be held liable for the acts of its employee, namely, *Clark* v. *Buckmobile Co.*, 107 App. Div. 120, 94 N. Y. Supp. 772, it is said:

"The mere fact that the persons in charge of the machine at the time of the accident were employees of the defendant does not render defendant liable for whatever they did. Unless they were engaged in the defendant's business at the time the accident occurred, the defendant is not liable for any injuries to the plaintiff resulting therefrom."

To the same effect are *Bourne* v. *Whitman, supra; Siegel* v. *White Co.*, 81 Misc. Rep. 171, 142 N. Y. Supp. 318; *Symington* v. *Sipes*, 121 Md. 313, 88 Atl. 34, 47 L. R. A. (N. S.) 662; *Moon* v. *Matthews, supra; McNeal* v. *McKain, supra; Smith* v. *Jordan, supra;* and a large number of cases cited in the foregoing cases. See, also, the recent case of *Halperin* v. *Bulling*, 50 Can. Sup. Ct. 471, 38 Ann. Cas. 1915D. It is also of some significance that the Courts of Appeal of Missouri seem to rest their judgments, to a large extent at least, upon the

Missouri statute, as is apparent from the opinions in the cases to which we have hereinbefore referred. Moreover, the justices do not agree upon the principles upon which the decisions should be based, as is apparent from the opinion of Mr. Justice Sturgis in the case of *Hays* v. *Hogan, supra.* A mere casual reading of the opinion in the latter case will disclose that the court seeks to distinguish automobiles from other vehicles and instrumentalities. No doubt, such a distinction is sought to be made, for the reason that, if it be not made, then the owner of every kind of instrumentality which may cause some injury while in the possession and under the control of another would, by mere inference, be held responsible upon the theory that the instrumentality was at the time of the injury being used for the benefit of the owner by his servant or agent. Such a doctrine, in the ordinary affairs of life, would be monstrous, to say the least. But, if it were assumed that a distinction should be made between automobiles and other vehicles and instrumentalities, it should be made by the Legislature, the lawmaking power, and not by the courts who merely declare the law as they find it. We, however, can conceive neither reason nor logic in attempting to make such a distinction. The reciprocal rights and duties of the owners of automobiles and of those who own and use other vehicles on the streets and highways are now well defined and understood. The owner of any kind of vehicle is liable for causing injury through negligence to another who is rightfully using the streets or highways. The reciprocal rights and duties in that regard have been thoroughly settled by the courts. For a collation of the cases see volume 22, Case and Comment, p. 185.

Neither does it work a hardship upon the plaintiff to require him to prove by competent evidence the defendant's connection with the vehicle or instrumentality which it is contended caused the accident and the relationship of the defendant and the person in whose charge the vehicle or instrumentality was at the time of the accident. As pointed out in *Ferguson* v. *Winter, supra,* this may be done in various ways. Of course, if the defendant is driving the vehicle, his responsibility is easily shown. If, however, it is driven by another, such

other's relationship to the defendant, as well as his connection with the vehicle at the time, may be shown by him or by any other competent facts from which such relationship and connection may be inferred. There is no reason, therefore, for having recourse to deceptive and misleading inferences.

Nor do the courts sustain the contention that an automobile is inherently a dangerous machine or instrumentality. The every-day knowledge and experience of the ordinary person is quite to the contrary. Every one who knows anything about the working machinery of the automobile knows that it is more easily managed and controlled than a fractious team or horse on the streets. He also knows that while it is in charge of an ordinarily careful and prudent driver it is just as safe and quite as harmless as any other conveyance used on the public streets. True, accidents occur; but they should not be attributed to the automobile, as such, but to the careless, and ofttimes reckless, drivers. Is it not more in consonance with reason and justice to blame a negligent driver who causes the mischief than it is to condemn the machine which he can, but negligently refuses to, control? Will it not also be more conducive to justice and fair play to apply to the owners of automobiles in our courts of justice the same rules that are applied to the owners of all other instrumentalities, except such as constitute what are known as attractive nuisances and those which are inherently dangerous?

Referring now to those cases referred to by plaintiff's counsel which we have not already distinguished, we specially invite attention to the case of *Moon* v. *Matthews,* which is cited by him, and to which we have before referred. While the court in that case seems to regard the cases from Missouri with some favor, yet the case of *Sarver* v. *Mitchell,* 35 Pa. Super. Ct. R. 69, from which we took the liberty to quote in *Ferguson* v. *Winter, supra,* is expressly followed. Then, again, the prior case of *Lotz* v. *Hanlon,* 217 Pa. 339, 66 Atl. 525, 10 L. R. A. (N. S.) 202, 118 Am. St. Rep. 922, 10 Ann. Cas. 731, which is in thorough harmony with our holding in *Ferguson* v. *Winter, Supra,* is also followed in *Moon* v. *Matthews.* There is nothing in the Pennsylvania cases, therefore, that lends any support to plaintiff's contention. Moreover, in all the cases,

with one or possibly two exceptions, the evidence was stronger than in the case at bar, although the courts announced the doctrine we have before stated. All the evidence the plaintiff produced to establish the doctor's responsibility for the acts of his son, Glen, was that the former owned the automobile, and that the same was at the time being used with his permission or consent by the son. That is not sufficient. Every time an owner lends any article or instrumentality to another, whether for hire or gratuitously, the owner consents to its use by the borrower or bailee. To hold that evidence of that fact is sufficient to fasten liability upon the owner of the instrumentality in case some injury is inflicted upon another by the negligent use of such instrumentality while it is in the possession and under the control of a third person is to revolutionize the law which holds the principal or master liable for the acts of his agent or servant. We are of the opinion, therefore, that the plaintiff produced no evidence which supports the finding of the jury or the judgment of the court as against the defendant W. P. Winters.

If the case be viewed, however, from the evidence submitted by both parties, the result must still be the same. The doctor and the two young ladies who were in the car with Glen at the time of the accident all testified that one of the young ladies was employed by the doctor in his office; that **3** about a week prior to the accident she asked the doctor whether she might take the automobile on the night in question to go to Spring City to attend her mother's birthday party; that the doctor said she might have the car if she could find a suitable driver, and suggested one Lundberg to her. The matter rested there until the evening of the accident. The young lady said she was not acquainted with Lundberg, so she asked Glen Winters to drive the car for her on the evening in question, which he did without the knowledge of the doctor. Just before starting out from home Mrs. Winters, the wife of the doctor, who was away from home during the afternoon, arrived home with her little girl, about five years of age, and the young lady who had obtained permission to use the car, and who had invited the other young woman who was in the car, prevailed on Mrs. Winters to accompany them to

the birthday party at Spring City, which she did. All the
doctor knew and consented to, therefore, was that the young
woman might take the car if she procured a driver. She, with-
out his knowledge, prevailed on Glen Winters to drive the car,
and the doctor's wife accompanied the party without the doc-
tor's knowledge. All of this evidence stands unquestioned by
any one. Since it is not in conflict with anything testified to
by plaintiff and his witnesses, it stands as the uncontroverted
evidence in the case. It certainly cannot be said to be in con-
flict with plaintiff's evidence, since all he proved was that the
car was owned by the doctor, and that he consented to its use.
All the rest was mere inference which we have held was not
proper nor permissible. Upon the uncontradicted evidence,
therefore, the doctor cannot be held liable under the law as it
is laid down by any court, since the car was not being used by
another who was his servant or agent, nor used in his busi-
ness affairs, nor for his benefit. The facts and circumstances
of this case, therefore, also illustrate the fallacy of the rule
that mere ownership is sufficient proof of liability on the part
of the owner. Under the rule as laid down by the Supreme
Court of Washington, the doctor could be held liable in this
case, although the testimony was all to the effect that the car
was driven and controlled by one who did not sustain the rela-
tionship of either agent or servant to the doctor, and who was
using the car, not for his benefit, but for the benefit of a third
person. This is so for the reason that, if the evidence is suffi-
cient to take the case to the jury, it is also sufficient to sustain
their finding, regardless of the amount of evidence to the con-
trary. It is needless, therefore, to speak of a *"prima facie"*
case which requires the defendant to explain, since the *prima
facie* case is sufficient, and no amount of explanation can be
of any aid to the defendant in case the jury do what they did
in this case—find against the defendant regardless of his un-
disputed evidence. Nor in this jurisdiction can this court in-
terfere with the jury's finding, although it may be against the
great weight of the evidence, so long as there is some substan-
tial evidence in support of the finding. The liability of a de-
fendant would thus be based upon a false and misleading in-
ference which was deduced from the ownership of the car
alone.

The judgment against the defendant Glen Winters must, for the reasons stated, be affirmed, and the judgment against W. P. Winters reversed, and the cause remanded to the district court of Sanpete County, with directions to grant a new trial as against him and to proceed with the case in accordance with the views herein expressed.

It is so ordered; the respondent to recover his costs as against Glen Winters, and W. P. Winters to recover his costs as against the respondent.

STRAUP, C. J., and LOOFBOUROW, District Judge, concur.