## J. C. MOORE, Adm'r, Plaintiff in Error, v. JESSIE WATKINS, Adm'r, Defendant in Error.

Eastern Section.  May 9, 1956.

Petition for Certiorari denied by Supreme Court, July 20, 1956.

O. T. Sloan, Madisonville, and Frank N. Bratton, Athens, for plaintiff in error.

Goddard & Gamble, Maryville, for defendant in error.

McAMIS, P. J. To recover for the death of his intestate, J. C. Moore, administrator of the estate of Chester Lee Moore, instituted this suit against Jesse Watkins, administrator of the estate of Robert Bolinger, in whose automobile Chester Lee Moore was riding at the time of his death. As a result of the accident Bolinger was also killed and there were no eyewitnesses.

At the conclusion of the evidence for the plaintiff the trial court directed a verdict for the defendant on the ground that, under all the circumstances, a jury could only speculate as to which of the parties was driving and that, although there was no proof that the automobile was owned by Bolinger and registered in his name, no presumption would arise under Code, secs. 2701, 2702, that he was driving since the statute only supplies a presumption that the owner *or his agent* was driving at the time plaintiff's intestate met his death and there was, therefore, an equal presumption that Moore was driving as Bolinger's agent.

Plaintiff Moore, administrator, has appealed assigning as error the action of the Court in directing a verdict, relying principally on Burkett v. Johnston, Tenn. App., 282 S. W. (2d) 647, 650, in which certiorari was denied May 6, 1955. The instant case was tried on September 1, 1955, and it is doubtful if the learned trial judge had the benefit of Judge Carney's opinion in that case when he acted on the motion for directed verdict. In that case also both occupants were killed and there were no eyewitnesses. There, however, the circumstances bearing on

the identity of the driver were allowed to go to the jury which found that the intestate owner of the car was driving. This court held that there was no error in submitting the case to the jury.

After reviewing the authorities dealing with the right to have a jury pass upon the question of which of two theories depending upon circumstantial evidence is the more probable, the Court there said:

"When we analyze and review the evidence presented in behalf of plaintiff's case in light of the expressions set out above, we are of the opinion that the jury might well have inferred that since the deceased, Burkett, was proven to be the owner of the passenger automobile involved in the death, and the deceased, Burkett, was found dead under the wheel of his automobile, that Burkett was driving said automobile at the time of his death. Likewise, we think that since the deceased, Johnston, was found dead on the seat beside Burkett, and there was no evidence indicating to the contrary, the jury could have found that Johnston was an invited guest in the car of Burkett."

In the Burkett case the position of the bodies was more favorable to the theory of the plaintiff but, as will be seen, in this case a violent impact with a barricade and a tree destroys or greatly lessens the probative force to be given that circumstance and there are other circumstances which in our opinion entitled the plaintiff to have a jury weigh the evidence in the light of the presumption or inference that the owner was driving where it is shown that he was riding in the car at the time of the accident.

The proof shows that Chester Lee Moore was 19 years of age. Young Bolinger was only a little older. Moore's father testified that Bolinger came to his home about 7 P.M. on October 13, 1954, and called Chester "and got him in the car and took him away." There is no proof that Moore was seen driving the car at any time before 11 P.M. when the accident occurred. The witness Steele testified that the two young men visited his beer tavern twice during the evening and left the second time about 8:30 in company with two girls. He did not observe which one was driving. The girls were not called as witnesses and there is no proof that Moore and Bolinger were seen by anyone else before the accident.

The accident occurred in the Town of Madisonville at a right angle curve to the left as the car approached from the west. Mr. Witt, a member of the Bar, testified that he heard the car pass his home a short distance west of the curve at such a speed that he realized an accident would occur at the curve. He heard a loud noise resulting from the impact of the car with a barricade and a large tree. Other witnesses testified that tracks led through a hole in the barricade to a tree. The car settled with its front against or near the tree but its rear was approximately 6 feet north of the tracks and a few feet from an undamaged portion of the barricade. Bolinger's body was picked up south of the car and about even with the right rear door which was found open. Moore's body was found on the front seat with his buttocks under the steering wheel. His head was resting on the front seat facing toward the front and about two feet from the right end of the seat. His feet were on the floor board.

The impact drove the right front wheel through the floor board on the right catching Moore's arms between

the wheel and front seat. Maroon paint matching the color of the wheel was found on his right pant leg. Shoe laces similar to those he was using were found on or near the wheel. A sun visor, found on the right of the floor, carried blood spots in which was matted hair matching that of Moore and unlike that of Bolinger.

The proof shows that bark on the tree had been disturbed as high as a tall man standing on the ground could reach and that there was a "crease" in the top of the car indicating that the top had been violently thrown against the trunk of the tree. If so, the car would have been resting on its front end and the rear almost in a vertical position.

Defendant insists that if Bolinger had been driving his body could not have been on the right of the car where it was picked up. This, of course, is a legitimate argument. Bnt a jury could reasonably find that the front of the car was pivoted at the tree; that the rear was forced off the ground and swung around and came to rest six feet north of the tracks laid down when the car went through the barricade and that Bolinger could have been thrown back over the front seat and out the right rear door when the car was upended against the tree and its rear swung around to the north. There are perhaps other possible explanations of the position of Bolinger's body. He could have jumped or fallen out before the impact. If so, his body would have been on the right of the car after the rear swung to the north.

If Moore was not driving Bolinger was and, clearly, we think a jury could reasonably say from all the circumstances that Moore was on the right when the impact occurred. His position on the seat was only one circum-

stance for a jury to consider. In view of the violence of the impact and the vertical position of the car, it would not be unreasonable to suppose that he would not remain in the same position. We cannot say that the physical facts are so palpably plain as to exclude a jury finding that Bolinger was driving.

But, if we are mistaken and, as the court said, the circumstances are such that a jury could only speculate as to which of the parties was driving there is then no evidence on that subject. The rule is that in the absence of proof there is a presumption or inference, where the owner is present and riding in his automobile, that he was driving and that the passengers were his guests. Burkett v. Johnston, supra; 61 C. J. S., Motor Vehicles, sec. 511, pp. 222-226; 5 Am. Jur. 841; Fox v. Lavender, 89 Utah 115, 56 P. (2d) 1049, 109 A. L. R. 105; Rodney v. Staman, 371 Pa. 1, 89 A. (2d) 313, 32 A. L. R. (2d) 976 and see Thompson v. Malone & Hyde, 16 Tenn. App. 152, 65 S. W. (2d) 1079, where, however, the owner whose car was being operated by another occupant sued the operators of another vehicle and the question was whether the owner was in control of his own automobile.

In Fox v. Lavender, supra [89 Utah 115, 56 P. (2d) 1057], the Court said:

"We believe that the better rule is that where an owner is an occupant of his own car there arises a rebuttable presumption that he has control and direction of it. It is not as if he were absent as in the case of McFarlane v. Winters, supra [47 Utah 598, 155 P. 437, L. R. A. 1916 D, 618], where this court refused to indulge the presumption. A person being conveyed by his own vehicle is presumed to control his own property in his own trans-

portation.'' See Midwest Dairy Products Co. v. Esso S. Oil Co., 193 Tenn. 553, 246 S. W. (2d) 974, refusing to indulge the presumption of control by an *absent* owner in the absence of proof of registration, since in such a case there is nothing to exclude the possibility of a bailment.

In Rodney v. Staman, supra, the only occupants of the car were a man and his wife. There were no eyewitnesses and both were killed. The administrator of the wife's estate sued the husband's executor and and court said [371 Pa. 1, 89 A. (2d) 315]:

"As to the appellant's contention that there is no evidence that the husband was driving the automobile at the time of the accident, there is evidence that he was the owner of the car. That fact affords a rebuttable presumption that he was the driver of the automobile at the time of the accident. * * * While there is no decision in this State directly in point, in Limes v. Keller, 365 Pa. 258, 260, 74 A. (2d) 131, 132, Mr. Justice Stern said '* * * there was enough circumstantial evidence (as to who was driving), *even apart from the rebuttable presumption that the owner of the automobile was operating it* * * *' (emphasis supplied), and cited Bastian v. Baltimore & Ohio R. Co., 3 Cir., 144 F. (2d) 120. In that case, the law of Pennsylvania on the question of the presumption was a matter for the Federal Court's ascertainment and application. It was there said in 144 F. (2d) at p. 123 that 'It is the law of many States that an owner is presumed to be in charge of and have control of his property, even if that property be a vehicle.'"

Attached to Rodney v. Staman there appears at p. 988, 32 A. L. R. (2d) an interesting and instructive annota-

tion of cases dealing with the question of presumption where the factual situation is like that here presented and all occupants of the car have died or due to injuries are unable to recall who was driving and there are no eye-witnesses. Other cases cited and discussed deal with the application of the presumption in the light of physical conditions and the question of the presumption, where the owner was driving when the trip started, that he continued to drive until the accident occurred. In by far the greater number of cases discussed the question of the owner being also the driver was held for the jury. The Ohio case of Renner v. Pennsylvania R. Co., Ohio App., 103 N. E. (2d) 832, is especially noteworthy because of the analogy that in that case also the parties stopped at a tavern and it was held that this fact did not destroy the presumption that the owner who was driving when the trip began continued to do so.

■ Code, secs. 2701, 2702, making proof of registration prima facie evidence of ownership and of operation by the owner or his agent, do not destroy the pre-existing general rules of the common law or render inapplicable the rules of circumstantial evidence. Good v. Tennessee Coach Co., 30 Tenn. App. 575, 209 S. W. (2d) 41. Since, in our opinion, plaintiff was entitled to have the case go to the jury under common-law rules the question of the application of these statutes where the owner was present in the car is reserved.

For the reasons indicated, the judgment is reversed and the cause remanded for another trial. Costs of appeal will be taxed to defendant in error and other costs left to abide the final result.

Hale and Howard, JJ., concur.