**FIDELITY AND CASUALTY COMPANY OF NEW YORK, a corporation, (Plaintiff) Respondent,**

v.

**WESTERN CASUALTY AND SURETY COMPANY, a corporation, et al., Defendants,**

Western Casualty and Surety Company, a corporation, Gail Frances McDaniel and Patricia McDaniel, (Defendants) Appellants.

Nos. 30386, 30390.

St. Louis Court of Appeals. Missouri.

July 5, 1960.

Motion for Rehearing or for Transfer to Supreme Court Denied Sept. 6, 1960.

Lusser, Morris & Burns, St. Louis, for appellant Western Casualty Co.

Ennis & Pannell, Festus, for appellants Gail Frances McDaniel and Patricia McDaniel.

Smith & Smith, Farmington, John Mohler, St. Louis, Ben G. Landau, Walter L. Brady, Jr., and J. M. Feigenbaum, St. Louis, for defendants.

Dearing, Richeson & Weier, Hillsboro, for Fidelity & Casualty Company of New York, plaintiff-respondent.

BRADY, Commissioner.

A collision occurred on the 12th day of March, 1958, upon Highway 61–67, approximately .3 mile south of the junction of that highway and Highway 21–A in Jefferson County, Missouri, involving a 1957 Buick automobile and a tractor-trailer truck. The Buick was owned by Clayton Lovelace, and with him in the car at the time of the collision were John McDaniel, Jr. and Anthony Joseph Bachek; all were instantly killed. The respondent, The Fidelity and Casualty Company, a corporation, hereinafter called Fidelity, insured the owner Lovelace. McDaniel owned a 1955 Ford automobile, and the appellant Western Casualty and Surety Company, a corporation, hereinafter called Western, had issued a policy of insurance thereon. Lovelace left surviving him his wife and three minor children. Bachek left surviving him a widow and three minor children. McDaniel left surviving him two minor children. The tractor-trailer was owned by Joe Ray, Inc., a corporation, was operated at that time by Douglas Wayne Clemons, and was insured by Travelers. This appeal arises out of an action for declaratory judgment filed by Fidelity against Western; Joe Ray, Inc.; Clemons; The Travelers Insurance Company; Southwestern Bell Telephone Company; Union Electric Company of Missouri; the two McDaniel minors; Lovelace's widow and three minor children personally, and Mrs. Lovelace as executrix of his estate; Mrs. Bachek and the three Bachek minors; David Compton, the lessee and operator of a restaurant, allegedly injured as a result of this collision; and William Vaughn and Homer Propst, the owners of the restaurant building leased by Compton. Southwestern Bell and Union Electric are alleged to have maintained certain wires and cable on poles at the scene of the collision and to have suffered damage thereto. By this action, Fidelity requested the court to determine the identity of the driver of the Buick, declare the rights and duties of Fidelity under its coverage of Lovelace, and declare the rights and duties of Western under its policy on the Ford belonging to McDaniel. The trial court submitted the issue as to who was driving the Buick at the time of the collision to a jury, which found by its verdict that McDaniel was driving. The other issues were then tried before the court, which entered its decree, the effect of which was to find McDaniel as the driver of the Buick, to declare that Fidelity and Western are to bear the costs of property damage equally between them, death claims to be borne two parts for Fidelity to one part for Western, and costs and expenses of litigation at the same two to one ratio. This ratio arises from the proportion one policy bears to the other, Fidel-

ity and Western having the same property damage limits, and Fidelity having $50,000-$100,000 on Lovelace and Western having $25,000-$50,000 on McDaniel in liability coverage. Timely separate motions to set aside the court's decree and enter judgment in their favor, or in the alternative for new trial, were filed by Western and by the McDaniel minors. Upon these motions being overruled, these parties have perfected their appeal to this court.

None of the parties raise any jurisdictional question, and we can detect none requiring transfer of this cause as provided by Article V, § 3, Constitution of Missouri, 1945, V.A.M.S. We have jurisdiction under Article V, § 13, Constitution of Missouri, 1945, V.A.M.S.

The McDaniel appeal assigns as error the actions of the trial court in (1) allowing a declaratory judgment action, contending that there was no justiciable issue admitting of specific relief through a decree conclusive in character and binding on the parties nor between Fidelity and the McDaniel heirs; (2) refusing to give a requested instruction.

Western's assignments of error are based upon the court's application of the ratio of two to one as to personal injury claims, and the cost and expenses of defending McDaniel's estate, and one to one as to property damage that might be assessed against that estate. Western has also raised one point dealing with the finding that McDaniel was the driver of this automobile, contending that it is not supported by sufficient competent evidence.

We will deal with the issue of whether or not there is a justiciable controversy, then consider the allegations of error dealing with the finding that McDaniel was the driver, and lastly consider the contentions of Western based upon the trial court's alleged error in interpreting the policies of insurance.

Section 527.020 RSMo 1949, V.A.M.S., sets forth that any person interested under a contract, or whose rights, status, or other legal relations are affected by contract, may have any question with regard thereto determined by a declaratory judgment action. Based upon this section and the other sections of the Act, this court in the case of Pennsylvania Casualty Co. v. Suburban Service Bus Co., Mo.App., 211 S.W.2d 524, held that a declaratory judgment action may be brought to have insurance policies construed and to determine liabilities thereunder. As is held in M. F. A. Mutual Insurance Co. v. Quinn, Mo. App., 259 S.W.2d 854, a declaratory judgment action may be used to determine whether a policy of insurance was in force at the time of a collision and questions of fact with respect thereto may be submitted to a jury. Statutory authority for the submission of any issues of fact to a jury are found in § 527.090 RSMo 1949, V.A.M.S.

■ It is well settled that for a case to be the proper subject for a declaratory judgment action, a justiciable controversy must exist which admits of specific relief through a decree of a conclusive character as distinguished from a decree which is merely advisory as to the state of the law upon purely hypothetical facts. Sections 527.010 and 527.020 RSMo 1949, V.A. M.S., M. F. A. Mutual Insurance Co. v. Hill, Mo., 320 S.W.2d 559; Missouri Digest, Declaratory Judgment, Key 66.

■ The chronological order of events is that while the accident occurred on March 12, 1958, Mrs. Lovelace did not file her action against Mrs. McDaniel, Administratrix, until September 5, 1958; and Mrs. Bachek did not file her action against Mrs. Lovelace and Mrs. McDaniel in their separate representative capacities as administratrices of their husbands' estates until September 11, 1958. Counsel for Fidelity, on behalf of Fidelity, wrote to Western on October 8, 1958, stating that the Bachek and Lovelace actions had been filed, and making demand upon Western to undertake the defense of these actions on behalf of Mrs. McDaniel under its policy of insur-

ance issued to Mr. McDaniel, because the Bachek and Lovelace petitions alleged that McDaniel was the driver. Under date of October 15, 1958, Western replied to that letter, stating that their position was that Fidelity should assume the defense of this lawsuit against Mrs. McDaniel for the reason that their policy on the Lovelace automobile was primary coverage, and even assuming that McDaniel was the driver, he would be an additional insured under that policy and entitled to the protection thereof, and for the further reason that the policy limits of that policy must be exhausted before any recovery could be had under the Western policy, and since the demands were in the statutory death amount of $25,000 there was no demand in excess of that primary coverage. The McDaniel heirs filed their action against Mrs. Lovelace in her representative capacity on December 13, 1958. In each of those actions, Joe Ray, Inc. and its driver, Clemons, were named as defendants, and in the Lovelace action Joe Ray, Inc. filed its cross-bill and counterclaim against Mrs. Lovelace and Mrs. McDaniel in their respective representative capacities. On January 21, 1959, Joe Ray, Inc. filed its action against Mrs. McDaniel as administratrix of her husband's estate.

Such a state of facts as alleged in the petition and later on proven in the evidence are a far cry from the facts contained in the case of M. F. A. Mutual Insurance Co. v. Hill, supra, which is the case principally relied upon by the McDaniel defendants as their authority to hold that the instant set of facts do not present a justiciable controversy. In that case, there was only one automobile and one insurance company involved. For a while, it was thought that the case might also involve a claim on the part of the deceased and the court makes pointed reference to the fact that no case was filed by the administratrix within one year allowed by law, and the allegation of the plaintiff's petition that the administratrix was threatening to bring suit dropped out of the case, leaving for the court's consideration the actions of the two passengers, which were alone pending against the administratrix. Both of the petitions alleged that the deceased owner of the automobile was the operator. Since neither of the injured passengers were claiming that the other was the operator of the car, it did not appear that there was any controversy upon which the court could pass judgment under these facts.

In the case of Maryland Casualty Co. v. Hubbard, D.C.S.D.Cal.1938, 22 F.Supp. 697, 699, Joe Petronovich owned a Ford and the Employers Liability Assurance Company insured him by a policy which contained an omnibus clause extending coverage to any person operating the automobile with the owner's permission. Blackwell borrowed the automobile, and while driving it with Joe's consent injured Hubbard. Blackwell was employed by Ridgeway Audit Co., and Ridgeway was insured by Maryland Casualty Company. Hubbard sued Blackwell and Ridgeway. Employers refused to defend, and denied liability. Maryland denied liability, claiming that Employers' policy was primary coverage and that Maryland's was merely excess coverage, available only after Employers' policy had been exhausted. Employers moved to dismiss the declaratory judgment action upon the ground that it failed to state a cause of relief under the declaratory judgments act. The issue and facts are thus, in effect, the same as those in the case at bar. The court held that declaratory judgment acts should be interpreted to extend their benefit to the interests of parties which are jeopardized or challenged even before a right of action exists or a cause of action accrues, citing Bouchard, Declaratory Judgments (1934) p. 36. It was further held that a demand that the insurer defend an action warrants an appeal to the court for a declaration, and that even when no demand to defend a pending action has been made, since the policy obligates the insurer to defend, declarations seeking to free the insurer of his obligation have been entertained in the

past. The court concluded that courts may intervene by way of declaration " * * * either before or after the stage of relief by coercion has been reached", citing Gully v. Interstate Natural Gas Co., 5 Cir., 82 F.2d 145. The court quoted with approval the words of Bankes, L. J. in Simmonds v. Newport etc. Co. Ltd., L.R. (1921), 1 K.B. 616, 627, that declaratory relief "was designed to supply the need for a form of action that would set controversies at rest before they led to the repudiation of obligations, the invasion of rights, and the commission of wrongs." The case turned only upon the question of whether an action for declaratory relief was available, and the other question common to that case and the one now before us as to which company had the excess and which the primary coverage was not answered. The quotation of Bankes, L. J., finds its expression in our statute in § 527.120 RSMo1949, V.A.M.S., stating that the Declaratory Judgments Act is remedial in character and is to receive a liberal construction. Stewart v. Shelton, 356 Mo. 258, 201 S.W. 2d 395.

In view of the facts in this case, where the controversy had "jelled" as evidenced by the filing of the various actions referred to by the date of trial, we confine ourselves solely to the issue as presented by such facts in our holding that a declaratory judgment action will lie in this case.

■ We next consider the McDaniel assignment of error based upon the trial court's action in refusing to give Instruction No. B. The instruction reads:

"Instruction No. B.

"The Court instructs the Jury that if you find and believe from the evidence that on March 12, 1958, a 1957 Buick fordor sedan automobile, Motor No. 7D4076844 was involved in a collision with a tractor-trailer truck on U. S. Highway 61–67 at a point approximately .3 of a mile South of the junction of Highway 21–A with said highway,

and if you further find that the said automobile was owned by Clayton Thomas Lovelace, and if you further find that Clayton Thomas Lovelace, John McDaniel, Jr., and Anthony Joseph Bachek were occupants of the said Buick automobile at said time and place, and were killed as a result of the collision, and if you further find that there is no preponderance of the evidence which would show that any one of these three persons was driving the said automobile at the time of the collision as aforesaid, then you are instructed that there is a presumption that the owner was driving the said automobile at said time and place."

The McDaniel argument is that the owner of an automobile is presumed to be the driver thereof if he is an occupant at the time of the collision and in the absence of evidence rebutting that presumption. It should immediately be noted that the presumption contended established is different from that arising from the so-called doctrine of continuing situation because for that doctrine to apply there must be some evidence showing who was in fact driving shortly prior to the time in question while that fact need not be in evidence at all under the presumption McDaniel would have us recognize. As authority for this contention, we are referred to 5A American Jurisprudence, Automobiles, § 919, p. 811, and to the annotation in 32 A.L.R.2d 990–996. No case authorities are afforded us. The section of American Jurisprudence referred to makes the statement that " * * * and, in the absence of proof that one other than the owner was driving the vehicle at the time of the accident, a rebuttable presumption or inference arises that the owner was driving it at the time of the accident," citing Rodney v. Staman, 371 Pa. 1, 89 A.2d 313, 32 A.L.R.2d 976. In that case, a husband and wife were driving home to Pennsylvania from a convention in Illinois, and while passing through Ohio were instantly killed when their automobile collided with a truck. The

administrator of the wife's estate brought suit on behalf of the two surviving minor children against the husband's executor. But in Pennsylvania there is a provision in the statutes that the license plate shall be prima facie evidence that the owner was at the time operating the vehicle. The court there held that the use of presumptions arising from the evidence is determined by the lex fori and determined the husband, the owner of the car, to have been the driver. In Tennessee, there is a provision in their statutes similar to that in Pennsylvania. It makes proof of registration prima facie evidence of ownership and of operation by owner or his agent. Even so, the statute has been held not to destroy the common law, and to prevent the determination of who was driving from being made from circumstantial evidence. Moore v. Watkins, 41 Tenn.App. 246, 293 S.W.2d 185; Ross v. Griggs, 41 Tenn.App. 491, 296 S.W.2d 641. In other jurisdictions the cases merely recite that such a presumption exists. (Grinstead v. Anscer, 353 Mich. 542, 92 N.W.2d 42; Lunde v. Dwyer, 74 S.D. 559, 56 N.W.2d 772, but compare Pearson v. Erb, N.D., 82 N.W.2d 818) but a careful reading of the opinions will disclose that the court in fact relied upon evidence of the physical facts and attending circumstances to make its determination of who was driving. See Cole v. Swagler, 308 N.Y. 325, 125 N.E.2d 592; Towne v. Bunce, 307 N.Y. 868, 122 N.E.2d 751; Drahmann's Admx. v. Brink's Admx., Ky., 290 S.W.2d 449.

In Parker v. Wilson, 247 N.C. 47, 100 S.E.2d 258, 261, the Supreme Court of North Carolina had the same contention before it as is advanced in the instant case. The court reviewed many of the authorities we have cited herein, and quotes with approval from Blashfield's Cyclopedia of Automobile Law and Practice, Vol. 9B, p. 528, where it is said: "Considerable legal controversy has developed over the extent to which presumption may follow proof of ownership." That understatement also has our approval. However, even though North Carolina had a statute similar to that of Pennsylvania and Tennessee, the court refused to adopt such a presumption, stating:

"We decline the suggestion of plaintiff's counsel to adopt a rule holding that upon the facts of the instant case a rebuttable presumption of inference arises that Donald Wilson was driving his automobile at the time of the fatal crash. Whether or not a rule as contended for by plaintiff should be adopted in this jurisdiction is a matter for the General Assembly."

As previously stated, there were no case citations to support the existence of such a presumption in Missouri. Neither do we have a statute such as that in Pennsylvania, Tennessee or North Carolina. See §§ 301.010–301.440 RSMo 1949, V.A.M.S. In many of those states reciting the existence of such a presumption such as Michigan and South Dakota, it is obvious from the cases that circumstantial evidence derived from the physical facts at the scene of the collision and the attending circumstances of the parties was what was actually relied upon by those courts in reaching their decision. Even in some of the states having a statutory form of presumption, the courts refuse to give it the effect contended for by McDaniel. Moore v. Watkins, supra, Parker v. Wilson, supra. The recognition of such a presumption goes too far and so interferes with the plaintiff's burden of proof as to make its adoption unwise. In addition, the recognition of such a far-reaching proposition properly belongs to the legislative, rather than to the judicial branch of our state government.

Moreover, the instruction is erroneous even if such a presumption were to be recognized, for it provides for the existence of the presumption unless there is "no preponderance of the evidence" showing who was driving. Even under those authorities impliedly recognizing such a presumption, it was held to have no effect after evidence

to the contrary was introduced, and the instruction is therefore couched in unacceptable language under the very authorities the McDaniels would have us follow. This is also the rule in this state. Presumptions as to a fact take flight upon the appearance in evidence of facts rebutting the presumption. Miceli v. Williams, Mo.App., 293 S.W.2d 136. It follows that the trial court did not commit error in refusing to give Instruction No. B.

■ The McDaniel heirs urge that they should be granted a new trial because of newly discovered evidence. Paragraph 6 of their motion for new trial reads:

"6. Because these defendants have discovered new evidence since the jury rendered its verdict, which evidence was not known to these defendants prior to the time the jury rendered its verdict, and in substance is as follows, to-wit: That Police Officer Haverstick of the Festus Police Department observed the Lovelace automobile at approximately 4:33 a. m. on March 12, 1958 proceeding in a Southerly direction on North Mill Street just North of the intersection of Mill Street with Main Street in Festus, Missouri, and recognized it from a description given to him by the Festus Police Radio Dispatcher, Harry Ramey, as being the automobile which was parked in the driveway of the Festus Police Department at 4:30 a. m. March 12, 1958; that Police Officer Haverstick was familiar with the Lovelace automobile and that said Police Officer describes the color of the Lovelace automobile as white over blue; that this evidence is essential and important for a proper determination by the jury to determine the driver of the Lovelace automobile at the time of the accident."

The evidence in this case was that the collision occurred at around 4:30 a. m., that about five minutes before that, the witness Roth left the Elks' Club in the company of McDaniel, Bachek and Lovelace; that McDaniel got in on the driver's side, Bachek occupying the middle of the front seat, and Lovelace sitting on the right side of the automobile; McDaniel then asked Roth to go out and get a cup of coffee with them, and Roth refused and walked toward his own car; Roth testified that he did not see the car pull away from its parked position, nor did any of the men say anything to him as to who would drive. As opposed to this evidence, the witness Ramey testified that about 4:30 a. m. an automobile pulled up in the driveway of the police station and a man on the right side of the automobile asked him how to back the car out; that the person he talked to was McDaniel and he identified him from Exhibit B, a picture of McDaniel; that at the time they pulled up he did not recognize any of the men although he knew Lovelace and Bachek but did not know McDaniel; *that the car was white*. Mrs. Lovelace stated that the Lovelace automobile was a "Dresden blue" and that there was no white on it. She further stated that Dresden blue is not a light blue and is not a deep blue, and identified it by referring to the suit a juror wore. The record does not disclose the exact shade of blue this suit was. To Ramey's testimony, the McDaniels add the inferences they contend should be drawn from the position of the bodies at the scene. The testimony of the sheriff was that he found the Buick with its left front door closed and its right front door open; that the three bodies were lying in such a position, relative to the automobile and its path, that Lovelace's body was not projected as far as McDaniel's body was. It is contended that since the other two persons sitting on the right of the driver would have blocked the driver's body from being thrown out first, this illustrates the importance of Ramey's evidence because that evidence is consistent with the position of the bodies under McDaniel's theory of ejection from the automobile and the jury must therefore have disbelieved Ramey because of Mrs. Lovelace's testimony that the car was "Dresden blue." The newly discov-

ered evidence is that a police officer saw this automobile at 4:33 a. m. and recognized it from a description given him by the Festus Police radio dispatcher, Ramey, as being the automobile parked in the driveway of the police station at 4:30 a. m. and that he was familiar with the Lovelace car and its color was *white over blue*.

■■ Granting of a new trial on the basis of newly discovered evidence is not favored, and rests largely in the sound discretion of the trial court. Absent a clear abuse of that discretion, the reviewing court will not interfere. Deacon v. City of Ladue, Mo.App., 294 S.W.2d 616. The party moving for new trial on the ground of newly discovered evidence must show: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to want of diligence that it did not come to his knowledge sooner; (3) that it is so material that it would probably produce a different result if a new trial were granted; (4) that it is not cumulative only; (5) that the purpose is not merely to impeach the character or credit of a witness; (6) the affidavit of the witness should be produced or its absence accounted for. Browhaw v. Dowd, Mo.App., 187 S.W.2d 29. It is obvious that of the requirements for motion for new trial on the grounds of newly discovered evidence, the sixth requirement is clearly not present. The absence of any semblance of the requisites of the sixth requirement as to an affidavit renders an inquiry into the presence or absence of the other five unnecessary. For that reason, and because we cannot find such a manifest abuse of discretion as to compel our interference, this assignment is ruled against the McDaniel appellants.

■ The last assignment of error dealing with the finding of the jury that McDaniel was the driver is presented by Western, which urges that the verdict is not supported by sufficient competent evidence. Western states in its brief that the court erred reversibly in adopting the

jury's verdict as its finding. Such a contention could only arise from a misinterpretation of the jury's function in this case. Section 527.090, supra, provides:

"When a proceeding under sections 527.010 to 527.140 involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other civil actions in the court in which the proceeding is pending. (R.S.1939, § 1134)."

The court called a jury, and the jury returned a verdict. The statute in question authorizes such a procedure. M. F. A. Mutual Insurance Co. v. Quinn, supra. Under § 527.090, supra, the court had no choice but to accept the jury's verdict, provided there was a submissible case made upon the issue of McDaniel's driving this automobile. The verdict of the jury in such an action is the same as the verdict in other civil actions, and the court's action in incorporating the verdict in its decree does not change the verdict into a finding by the court that we may review as in equity matters. That was merely a procedural action so that the decree would completely dispose of the issues, and in no way negates the binding effect of the jury's verdict. In such circumstances, our review is limited to the same matter as it is in other civil jury verdicts; i. e., was there a submissible case? We do not think Western's assignment of error can be reasonably interpreted to present such a question, but even if it could be, the evidence of McDaniel's driving was clearly sufficient to authorize submission of that issue to the jury.

There was no reversible error in the finding that McDaniel was the driver of this automobile.

■ The final point concerns the trial court's ruling that Fidelity and Western are to pay property damage claims that may be adjudged against Mc Daniel's

estate in equal proportion since each policy had the same property damage coverage and are to bear costs and expenses of defending against any bodily injury claims, and are to pay any such claims adjudged against the McDaniel estate arising out of this occurrence at a ratio of two parts by Fidelity, which had $50,000-$100,000 coverage on Lovelace, to one part by Western, which had $25,000-$50,000 coverage on McDaniel. In this connection, Western makes the following contentions in its assignment of error because of the pro rata provisions of the decree: (1) that by its plain and unambiguous terms the Western policy affords no insurance to McDaniel except excess insurance available after exhaustion of any other "valid and collectible insurance"; (2) that by its plain, unambiguous terms the Fidelity policy afforded primary coverage to McDaniel in the operation of the Lovelace automobile to the full amount of the policy limits and therefore constituted "other valid and collectible insurance" as that phrase is used in the Western policy.

We have above affirmed the finding that McDaniel was the driver of the Buick and it is admitted that the Buick belonged to Lovelace. Under such circumstances we are concerned with the provisions of McDaniel's policy only as they affect his coverage while he was driving an automobile he did not own. These provisions are generally referred to as the "Drive Other Cars" or extended insurance provisions so far as the driver of the automobile of another is concerned. In Western's policy, that provision is Insuring Agreement v. Use of Other Automobiles. It reads in its pertinent parts, and is identical to the Fidelity policy:

"V. Use of Other Automobiles. If the named insured * * * owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy * * * applies with respect to any other automobile, subject to the following provisions: * * *."

Insuring Agreement IV, (a), (1), defines the automobile referred to as:

"Described Automobile. The motor vehicle * * * described in this policy or, if none is so described * * any private passenger automobile owned on the effective date of this policy by the named insured * * *."

It is clear from a reading of Insuring Agreement V and the definition of the term, "Described Automobile" in the Western policy that non-owned automobiles are included in the term "Other Automobiles" as that term is used in section 19 of the Conditions of the Western policy. Western so admits in its brief, while discussing Aetna Casualty & Surety Co. v. Buckeye Union Casualty Co., 157 Ohio 385, 105 N.E.2d 568, 31 A.L.R.2d 1317, a case decided by the Supreme Court of Ohio. In that discussion, Western refers to the Aetna policy as having the same provision as its policy in the instant case providing "* * * that its policy shall be only excess insurance over any other valid and collectible insurance, available to its named insured Butler, while driving a *non-owned automobile*." (Emphasis supplied.)

McDaniel owned a private passenger automobile which was described in Western's policy as a 1955 Ford, and the insurance afforded by the Western policy was therefore extended to him while he was using any other, including non-owned automobiles, with certain exceptions not pertinent under these facts. What was that insurance? It was for bodily injury and/or property damage liability arising out of the ownership, maintenance or use of the automobile. The loss that we are here concerned with can arise only out of the use of the automobile. Therefore, the coverage of his Western policy went with him while he was using the Buick belonging to Lovelace except as that coverage is limited by the provisions of Section 19 of the "Conditions" of his Western policy. That section provides:

"19. Other Insurance—Coverages A, B, D, E, F, G, H, I and J: If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance."

The proviso, so far as it is pertinent to our inquiry, can therefore be summarized to read:

"* * * the insurance with respect to * * * other (including non-owned) automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance."

The coverage of his policy with Western therefore was limited to coverage in excess of any other valid and collectible insurance while he was using Lovelace's Buick.

So far as the owner of the automobile driven is concerned, the part of his policy with which we are concerned is usually called the omnibus clause or additional insured clause. Lovelace's policy on his Buick automobile with Fidelity was for bodily injury and/or property damage liability arising out of the use of the automobile not only for Lovelace as the named insured, but also for McDaniel as an additional insured. Insuring Agreement III of the Fidelity policy, as amended by Section II, paragraph 4 of the Family Automobile Coverage rider, provides that, as to bodily injury and property damage coverage, the insureds are:

"(1) With respect to the owned automobile,

"(i) the named insured and any resident of the same household,

"(ii) any other person using such automobile, provided the actual use thereof is with the permission of the named insured: * * *"

That is, anyone using the owned automobile, the Buick, with permission of Lovelace became an insured. But Fidelity limited its coverage of McDaniel as an additional insured by Condition 20 of its policy. As amended by Section II, 11, of the Family Automobile Coverage rider, that condition provided:

"Other Insurance: Except under Coverage C, if the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, under coverages A and B the insurance with respect to temporary substitute automobiles under Insuring Agreement IV or other automobiles under Insuring Agreement V shall be excess insurance over any other valid and collectible insurance."

However, this paragraph of the policy is amended by the Family Automobile Coverage rider attached to the policy, and Paragraph II, 11, thereof provides:

"11. In condition 20, 'Other Insurance,' the words 'non-owned automobiles' are substituted for the words 'other automobiles under Insuring Agreement V,' and the words 'under coverages A and B' are deleted from the first paragraph of condition 20."

The effect, then, of the amendment is to make the apportionment provisions of paragraph 20 of the "Conditions" of the Fidelity policy read the same as before the amendment while the proviso is amended to read, so far as its pertinent provisions are concerned:

" * * * the insurance with respect to * * * non-owned automobiles shall be excess insurance over any other valid and collectible insurance."

Construing Insuring Agreement V with Section 19 of the Conditions of the Western policy, we find that the coverage afforded by that policy for loss resulting to Mc-Daniel arising from the use of an automobile other than that referred to by the provisions of Insuring Agreement IV(a), (1), i. e., the "Described Automobile", shall be excess over any other valid and collectible insurance. Construing Insuring Agreement V with section 20 of the "Conditions", as amended, of the Fidelity policy we find that the coverage afforded by that policy for loss resulting to Lovelace as the named insured or McDaniel as an additional insured arising from the use of an automobile other than the Buick automobile and defined as a "non-owned automobile" by Insuring Agreement IV(a), (1), of the Fidelity policy as amended by II, 5, of the Family Automobile Coverage rider, shall be excess over any other valid and collectible insurance.

The language of the excess coverage provisions of each policy is indeed alike, but it does not follow that those provisions are indistinguishable nor that they are mutually repugnant. This is because, under the factual situation in this case, any loss that will be suffered by McDaniel or his estate must arise from the use of a non-owned automobile, that is, one other than the Ford named in his policy. Western's excess clause is therefore applicable provided there is other "valid and collectible" insurance. In like manner, under the factual situation presented in this case, any loss suffered by McDaniel, as an additional insured under Lovelace's Fidelity policy while driving Lovelace's automobile cannot arise from the use of a non-owned automobile, that is, one other than those described in this policy, but must necessarily arise out of the use of one of the automobiles described in the policy and admittedly owned by him, the Buick involved in the collision.

Fidelity's excess clause, therefore, cannot be applicable under these facts. To rule otherwise would render meaningless the excess clause in each policy of insurance. See Blashfield Cyclopedia of Automobile Law and Practice, Vol. 6, Part 2, § 4107; Norris v. Pacific Indemnity Co., Cal.App., 237 P.2d 666.

■ Was there any other "valid and collectible" insurance available to McDaniel? As stated earlier herein, under Insuring Agreement III, as amended by Section II, paragraph 4 of The Family Automobile Coverage rider, McDaniel became an additional insured under the items of the Fidelity policy provided the actual use of the Buick automobile covered by the Fidelity policy was with the permission of Lovelace. Does this record disclose that McDaniel had Lovelace's permission to use the Buick automobile? The rule in this state is that if one is operating the automobile of another while the owner is riding in it, apparently acquiescing in the operation, the presumption is raised that the driver is the agent of the owner. Brucker v. Gambaro, Mo., 9 S.W.2d 918, loc.cit. 921; See Berry on the Law of Automobiles, 5th Ed. p. 914, § 1223, quoted with approval in Brucker v. Gambaro, supra. It follows that McDaniel must be said to have had the permission of Lovelace and that there was other "valid and collectible" insurance available to McDaniel; i. e., the Fidelity policy, and therefore the excess clause of Condition 19 of Western's policy is applicable. This case therefore falls within the class of cases distinguished in Arditi v. Massachusetts Banking and Insurance Co., Mo., 315 S.W. 2d 736, loc.cit. 743, and the decision in that case is not binding upon this court in the instant case.

In the Arditi case the Supreme Court said that they did not think that the automobile owner's insurance is always primary, but that this question depended instead " * * on the policy provisions and other circumstances." It is the provisions of the Fidelity policy that compel us to find that policy

primary in the instant case. The word "excess" is used in that policy and is defined by Webster's New International Dictionary, 2nd Edition, as "a state surpassing or going beyond limits; * * * superfluity, superabundance; * .*. * the amount or degree by which one thing or number exceeds another; remainder; * * *." Without the limitation of "excess insurance" upon the coverage afforded McDaniel by the Fidelity policy in Condition 20, there can be no doubt but that coverage is unlimited, and since we have held that "excess insurance" limitation inapplicable, it follows that the coverage afforded by the Fidelity policy must be primary. Accordingly, the coverage of the Western's policy is only available in the amount or degree by which the judgments and expenses of the bodily injury and property damage claims constitute an amount over the Fidelity coverage limits. The remainder, or difference between the amount of Fidelity's coverage and the amount adjudicated as McDaniels' liability, constitutes the "excess", and Western's policy is only available for that amount.

The judgment of the trial court should therefore be affirmed as to paragraph (1) thereof; i. e., that McDaniel was the driver of this automobile; and should be reversed with respect to the remaining portion thereof, with directions to the trial court to enter judgment not inconsistent with this opinion.

The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court. The judgment is accordingly affirmed as to paragraph (1) thereof and reversed as to the remaining portions, and the cause remanded to the trial court for further proceedings.

WOLFE, P. J., RUDDY, J., and JAMES D. CLEMENS, Special Judge, concur.

ANDERSON, J., not participating.